George M. Wallace -- Cal. Bar No. 101472
GEORGE M. WALLACE, ATTORNEY AT LAW
215 North Marengo Avenue
Third Floor
Pasadena, California 91101-1504
gwallace@wbslaw.com
(626) 844-6777; Fax (626) 795-0353

Joel S. Farkas, Esq. (S.B. # 244032)
LAW OFFICE OF JOEL FARKAS
5404 Whitsett Avenue #46
Valley Village, California 91607
jsf@licitlaw.com
Tel: (310) 621-6654
Fax: (818) 495-2513

Attorneys for Appellants, BRUCE BOYER;
DAVID WAYNE GRIGGS; KIMBERLY
COLLEEN GRIGGS; and JONATHAN BOYER

## UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| BRUCE BOYER, an individual; DAVID WAYNE GRIGGS, an individual; KIMBERLY COLLEEN GRIGGS, an individual; and JONATHAN BOYER, an individual, | ) Docket No. 24-5393 ) ) ) USDC Case No. ) 2:23-cv-06828-TJH ) ) |
| Plaintiffs/Appellants, | ) ) ) |
| vs. | ) ) ) |
| CITY OF SANTA BARBARA; SANTA BARBARA POLICE DEPARTMENT, | ) ) ) ) ) |
| Defendants/Appellees. | ) ) ) |

## APPELLANTS' EXCERPTS OF RECORD
## VOLUME 1 of 1

## ON APPEAL FROM THE UNITED STATES DISTRICT
## COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

# INDEX

Order of Dismissal, filed August 1, 2024, entered August 2, 2024 [Docket #32]     4

Reply in Support of Motion to Dismiss Case, by Defendants City of Santa Barbara and Santa Barbara Police Department; filed March 25, 2024 [Docket #31]     11

Memorandum in Opposition to Motion to Dismiss Case, with Declaration of Bruce Boyer and exhibit, by Plaintiffs Bruce Boyer, Jonathan Boyer, David Wayne Griggs, and Kimberly Colleen Griggs; filed March 15, 2024 [Docket #30]     16

Motion to Dismiss Case, including Notice, Memorandum in Support, Declaration and Exhibits, by Defendants City of Santa Barbara and Santa Barbara Police Department; filed March 1, 2024 [Docket #26]     37

First Amended Complaint for Violation of 42 U.S.C. §1983, by Plaintiffs Bruce Boyer, Jonathan Boyer, David Wayne Griggs, and Kimberly Colleen Griggs; filed February 16, 2024 [Docket #24]     65

Motion to Dismiss Case, including Notice, Memorandum in Support, Declaration and Exhibits, by Defendants City of Santa Barbara and Santa Barbara Police Department; filed January 22, 2024 [Docket #20]     76

Complaint for Violation of 42 U.S.C. §1983, by Plaintiffs
Bruce Boyer, Jonathan Boyer, David Wayne Griggs, and
Kimberly Colleen Griggs; filed August 18, 2023
[Docket #1]                                                       106

Notice of Appeal by Plaintiffs Bruce Boyer, Jonathan
Boyer, David Wayne Griggs, and Kimberly Colleen
Griggs; filed August 30, 2024 [Docket #35]                        116

Docket, United States District Court, Central District of
California, Case No. 23-cv-06828-TJH                               118

# United States District Court
# Central District of California
# Western Division

|  |  |
|---|---|
| BRUCE BOYER, *et al.*, | CV 23-06828 TJH (MAAx) |
| Plaintiffs, |  |
| v. |  |
| CITY OF SANTA BARBARA, *et al.*, | Order |
| Defendants. | [26 ] [JS-6] |

The Court has considered the motion to dismiss [dkt. # 26] filed by Defendants City of Santa Barbara ["the City"] and the Santa Barbara Police Department ["SBPD"], together with the moving and opposing papers.

The following facts were as alleged in the First Amended Complaint ["FAC"].

On August 21, 2021, the City, the SBPD, and the Coalition Against Gun Violence ["the Coalition"] held a gun buyback event at the Earl Warren Showgrounds ["the Showgrounds"] in Santa Barbara, California. The Coalition is a non-governmental gun control advocacy organization. People who wanted to sell their guns had to place them in the trunk or rear of their vehicles, and, then, get into a line of vehicles as they drove

(5 of 123), Page 5 of 123    Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 5 of 123
Case 2:23-cv-06828-TJH-MAA    Document 32    Filed 08/01/24    Page 2 of 7    Page ID
#:159

1    through the Showgrounds to reach the gun exchange area.  The gun sellers were, then,
2    instructed to open the trunk or rear of their vehicles to allow an SBPD officer to remove
3    the guns.  After inspecting the guns, the SBPD officer would give the seller a $100 gift
4    card for each gun surrendered.

5    Plaintiffs Bruce Boyer, Jonathan Boyer, David Griggs, and Kimberly Griggs are,
6    allegedly, firearm rights activists who thought the gun buyback event was unconstitutional
7    and participated in the event as a means of protest.  On the day of the event, the Boyers
8    and the Griggses queued in the gun exchange line with toy guns placed in the trunks of
9    their vehicles.

10    When Bruce Boyer arrived at the exchange location, an SBPD officer inspected the
11    toy guns and, then, informed Boyer that they cannot be exchanged for gift cards.  In
12    response, Boyer requested to speak to someone in charge.  The SBPD officer, then,
13    escorted him to a Coalition representative.  Shortly thereafter, a second SBPD officer
14    approached and stated that David Griggs, Kimberly Griggs, and Jonathan Boyer were at
15    the exchange location demanding that they, also, be given gift cards for their toy guns.  At
16    that point, the first SBPD officer told Bruce Boyer that if he, David Griggs, Kimberly
17    Griggs, and Jonathan Boyer did not leave the event, they would be arrested. Consequently,
18    they left without receiving gift cards.  However, the Coalition and the SBPD kept the toy
19    guns.

20    On August 18, 2023, Plaintiffs Bruce Boyer, Jonathan Boyer, David Griggs, and
21    Kimberly Griggs filed this action against the City, the SBPD, the Coalition, and Does 1
22    through 101.

23    On January 22, 2024, the City and the SBPD filed their first motion to dismiss,
24    pursuant to Fed. R. Civ. P. 12(b)(6).  On February 16, 2024, the Boyers and the Griggses
25    filed their FAC, thereby mooting the motion to dismiss.

26    The FAC alleged three claims under 42 U.S.C. § 1983 against the City, the SBPD,
27    the Coalition, and Does 1 through 101, for: (1) First Amendment violations for the
28    deprivation of free speech and freedom of assembly rights; (2) Fourth Amendment

(6 of 123), Page 6 of 123    Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 6 of 123
Case 2:23-cv-06828-TJH-MAA    Document 32    Filed 08/01/24    Page 3 of 7    Page ID
#:160

1  violations for unreasonable seizures; and (3) Fourteenth Amendment violations for the

2  deprivation of Equal Protection.

3       The City and the SBPD, now, move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

4  They, also, request that the Court take judicial notice of the various documents and facts.

5  **Motion to Dismiss Standard**

6       Dismissal under Fed. R. Civ. P. 12(b)(6) is proper when a complaint exhibits either

7  a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a

8  cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.

9  1988).

10      To sufficiently state a claim, a plaintiff must allege enough facts so that the

11 requested relief is plausible on its face and the defendant receives notice of the basis for

12 the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  While the factual

13 allegations need not be detailed, they must go beyond labels and conclusions and raise a

14 right to relief above the speculative level.  *Twombly*, 550 U.S. at 555.  Further, the Court

15 must accept all allegations in the complaint as true and draw all reasonable inferences in

16 the plaintiff's favor.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

17      In deciding a motion to dismiss for failure to state a claim, the Court must consider

18 the facts alleged in the complaint, as well as documents referenced or attached to the

19 complaint and facts subject to judicial notice.  *See Tellabs, Inc. v. Makor Issues & Rts.,*

20 *Ltd.*, 551 U.S. 308, 322 (2007).

21 **Judicial Notice**

22      In general, when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6),

23 the Court cannot look beyond the complaint.  *See Mack v. S. Bay Beer Distribs., Inc.*, 798

24 F.2d 1279, 1282 (9th Cir. 1986).  However, the Court may consider judicially noticeable

25 facts.  *Mullis v. United States Bankruptcy Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

26 A judicially noticeable fact must be one "not subject to reasonable dispute in that it (1) is

27 generally known within the territorial jurisdiction of the trial court; or (2) can be accurately

28 and readily determined from sources whose accuracy cannot be reasonably questioned."

(7 of 123), Page 7 of 123     Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 7 of 123
Case 2:23-cv-06828-TJH-MAA     Document 32     Filed 08/01/24     Page 4 of 7     Page ID
#:161

Fed. R. Evid. 201(b).

Here, the City and the SBPD requested the Court to take judicial notice of the following documents and facts: (1) A preliminary environmental review of the City of Santa Barbara Police Station Project; (2) The fact that the Showgrounds is owned by the State of California; (3) The fact that the Showgrounds is a "multi-use community event center"; and (4) The Showgrounds's webpage.

The Court can take judicial notice of the existence of the preliminary environmental review because it is publicly available on the City's official government website. *See Kohja v. Orexigen Therapeautics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). However, while the Court may take judicial notice of the existence of the preliminary environmental review, it may not take judicial notice of the review's contents. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).

The Court cannot take judicial notice that the Showgrounds is owned by the State of California, or that the Showgrounds is a multi-use community event center, because those facts are not generally known facts based on the unrefreshed and unaided recollection of the populace at large within this Court's jurisdiction. *See United States v. Mariscal*, 285 F.3d 1127, 1131-32 (9th Cir. 2002). Additionally, the Showgrounds's webpage, which is not an official government website, is not a source whose accuracy cannot reasonably be questioned. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

**Doe Defendants**

A plaintiff may name a Doe, or fictitious, defendant in the complaint if the plaintiff does not know the identity of that defendant prior to the filing of a complaint. *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999). However, Local Rule 19-1 prohibits the inclusion of more than ten fictitious defendants. Here, the FAC named 101 fictitious defendants. Further, the Court may dismiss Doe defendants who are not identified and served within 90 days after an action is filed. *See* Fed. R. Civ. P. 4(m).

Because it has been more than 90 days since this action was filed on February 16,

2024, all of the Doe defendants, here, must be dismissed, *sua sponte.*

**Santa Barbara Police Department**

A city's police department is not a legal entity separate from the city for claims brought pursuant to 42 U.S.C. § 1983. *See Saved Magazine v. Spokane Police Dep't*, 19 F.4th 1193, 1201 (9th Cir. 2021). A police department, therefore, cannot be sued separately from the city it serves. *See United States v. Kama*, 394 F.3d 1236, 1240 (9th Cir. 2005). Accordingly, the claims, here, against the SBPD must be dismissed as duplicative.

**Fourth Amendment Standing**

Based on the allegations in the FAC, there is a question as to whether Jonathan Boyer, David Griggs, and Kimberly Griggs have standing to assert their Fourth Amendment claims. Lack of standing was not raised by the City.

To have standing, a plaintiff must allege that: (1) He suffered an injury in fact that is concrete and particularized, actual or imminent, and not hypothetical or conjectural; (2) There is a causal connection between the injury and the defendant's conduct or omissions; and (3) There is a likelihood that the injury will be redressed by a favorable court decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). An injury is particularized if it directly affects the plaintiff in a personal and individual way. *See Lujan*, 504 U.S. at 560. Further, a plaintiff, generally, cannot assert claims based on another person's legal rights. *City of Rialto v. W. Coast Loading Corp.*, 581 F.3d 865, 877 (9th Cir. 2009).

Here, the FAC clearly alleged that at least some of the toy guns seized by an SPBD officer were owned by Bruce Boyer. However, the FAC was silent as to whether any of the toy guns were owned by Jonathan Boyer, David Griggs, and/or Kimberly Griggs. Because no ownership interests, other than Bruce Boyer's, were alleged, Jonathan Boyer, David Griggs, and Kimberly Griggs failed to set forth sufficient facts to establish that they suffered an injury in fact that was particularized or actual. *See Lujan.* Accordingly, Jonathan Boyer's, David Griggs's, and Kimberly Griggs's Fourth Amendment claims must be dismissed, *sua sponte*, without prejudice for lack of standing.

(9 of 123), Page 9 of 123    Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 9 of 123
Case 2:23-cv-06828-TJH-MAA    Document 32    Filed 08/01/24    Page 6 of 7    Page ID
#:163

**Sufficiency of the § 1983 Claims Against the Coalition**

To sufficiently allege a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) That a person or an entity deprived him of a federal right; and (2) That this person or entity acted under color of state law. *See Naffe v. Frey*, 789 F.3d 1030, 1035-36 (9th Cir. 2015). Generally, however, private parties do not act under color of state law. *See Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991). A bare legal conclusion, alleging there was an action under color of state law, is insufficient. *See Naffe*, 789 F.3d at 1039. Additionally, allegations that the government authorized, approved, or acquiesced to actions taken by a private party are insufficient to show state action. *See Ballinger v. City of Oakland*, 24 F.4th 1287, 1300 (9th Cir. 2022). To adequately allege that a private party acted under color of state law, a plaintiff must allege the existence of a "sufficiently close nexus" between a governmental entity and the challenged action of the private party. *See Ballinger*.

Here, Plaintiffs alleged that the Coalition, a private non-governmental entity, co-hosted and advertised the gun buyback event with the City and the SBPD, and that the Coalition violated various constitutional rights enforceable through § 1983 "while acting under the color of state law." The allegation that the Coalition was acting under color of state law is, merely, a legal conclusion. *See Twombly*, 550 U.S. at 555. Moreover, Plaintiffs failed to sufficiently allege a nexus between the Coalition's alleged unconstitutional acts and the government. *See Ballinger*. Accordingly, Plaintiffs' § 1983 claims against the Coalition must be dismissed without prejudice.

**Sufficiency of the § 1983 Claims Against The City**

Municipalities may be liable under § 1983 only if one of their policies, customs, or practices led to the violation of an individual's federally protected rights. *Monell v. Dept. of Soc. Serv. Of N.Y.C.*, 436 U.S. 658, 690 (1978). To sufficiently state a *Monell* claim, a plaintiff must allege, *inter alia*, the specific policy, practice, or custom that led to the alleged violation. *Lee*, 250 F.3d at 682. Here, the FAC did not identify any specific City policy, practice, or custom that led to the alleged violations of Plaintiffs' constitutional

rights.  Accordingly, the § 1983 claims against the City must be dismissed without prejudice.

Accordingly,

It is Ordered that this case be, and hereby is, Dismissed without prejudice.

Date: August 1, 2024

_____
Terry J. Hatter, Jr.
Senior United States District Judge

SARAH J. KNECHT, City Attorney (SBN 138275)
Tom R. Shapiro, Assistant City Attorney (SBN 127383)
Delaney R. Satz, Deputy City Attorney (SBN 335899)
740 State Street, Suite 201
Post Office Box 1990
Santa Barbara, California 93102-1990
Telephone: (805) 564-5326
Fax: (805) 564-5426
Email: tshapiro@santabarbaraca.gov
       dsatz@santabarbaraca.gov

Attorneys for Defendants City of Santa Barbara
and Santa Barbara Police Department

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE BOYER, an individual; DAVID WAYNE GRIGGS, an individual; KIMBERLY COLLEEN GRIGGS, an individual; and JONATHAN BOYER, an individual,<br><br>      Plaintiffs,<br><br>vs.<br><br>CITY OF SANTA BARBARA; SANTA BARBARA POLICE DEPARTMENT; JOHNS HOPKINS CENTER FOR GUN VIOLENCE SOLUTIONS, successor in interest of The Coalition Against Gun Violence; and DOES 1 to 101,<br><br>      Defendants. | CASE NO. 2:23-cv-06828-TJH-MAA<br><br>**CITY'S REPLY TO OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date: February 26, 2024<br>Time: Under Submission<br>Place: Courtroom 9C, 9th Floor<br>      350 W. 1st Street, Los Angeles<br>Judge: Hon. Terry J. Hatter, Jr.<br><br>Complaint Filed: 8/18/23<br>FAC Filed: 2/16/24 |

Defendants City of Santa Barbara and Santa Barbara Police Department (collectively the "City" or "Defendants") submit this Reply to Plaintiff's untimely Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint.

///

(12 of 123), Page 12 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 12 of 123
Case 2:23-cv-06828-TJH-MAA   Document 31   Filed 03/25/24   Page 2 of 5   Page ID
#:154

## I.     INTRODUCTION

Plaintiffs' late-filed Opposition to the City's 12(b)(6) Motion to Dismiss their First Amended Complaint ("FAC") does not refute or distinguish the legal authorities cited by the City in support of its motion.  Instead of addressing the cases cited by the City, the opposition makes conclusory allegations as to what facts could be pled without providing any additional specific facts related to the incident in question.

The lack of factual specifics in both the original Complaint and the FAC, render the case subject to dismissal, and despite the Opposition's blithe comment that additional allegations "could be made, if the Court deems it necessary…", the Court should not allow this.

It is well settled that dismissal for failure to state a claim may be based on either: (1) lack of cognizable legal theory, or (2) absence of sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of a cognizable legal theory. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556–557 (2007).  Plaintiffs have now had two opportunities to allege any and all facts necessary to state a claim.  They have failed to do so, and no further leave to amend should be granted.

## II.    ARGUMENT

### A.      The First Amended Complaint Fails to State a Claim *Under Monell v. New York City Department of Social Services*.

The First Amended Complaint ("FAC") fails to assert a claim against any individual police officers.  In support of their Opposition, Plaintiff Bruce Boyer submitted a declaration identifying Lieutenant Aaron Baker as the officer referred to in the FAC.  However, Plaintiffs failed to include this information in their FAC.[1]

---

[1] Plaintiffs submitted a declaration as well as exhibit in support of their FAC. These are outside the pleadings and the Court should not consider either document, or

(13 of 123), Page 13 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 13 of 123
Case 2:23-cv-06828-TJH-MAA    Document 31    Filed 03/25/24    Page 3 of 5    Page ID
#:155

Even if they had, Baker would be entitled to qualified immunity. "Qualified immunity…shields government officials performing discretionary functions from liability for civil damages[.]" *Saved Magazine v. Spokane Police Department*, 19 F.4th 1193, 1198 (9th Cir. 2021) (quoting *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994)). Additionally, the Santa Barbara Police Department is not an entity that may be sued. *See United States v. Kama*, 394 F.3d 1236, 1239-40 (9th Cir. 2005) (Ferguson J., concurring) ("municipal police departments and bureaus are generally not considered 'persons' within the meaning of 42 U.S.C. § 1983"); *Nelson v. Cty. of Sacramento*, 926 F.Supp.2d 1159, 1170 (E.D. Cal. 2013).

Furthermore, Plaintiffs fail to adequately allege that the City had a policy, custom, or practice leading to a constitutional violation. Plaintiffs simply allege that, "The concerted manner in which Defendants dealt with Plaintiffs and their toy 'guns' was indicative of clear policies and guidelines having been established to deal with such situations. Each individual played their part and there was little room for improvisation. Each directive was firmly and bluntly articulated in such a way it appeared to be rehearsed." It is unclear what policy Plaintiffs are alleging the City had that violated their constitutional rights. This statement, without additional facts showing the alleged policy, custom, or practice, is insufficient to allege a *Monell* claim. *See Villarreal v. County of Monterey*, 254 F.Supp.3d 1168, 1195 (N.D. Cal. 2017).

**B.    The First Amended Complaint Fails to State a Claim for a Constitutional Violation.**

The Earl Warren Showgrounds are not a traditional or designed public forum for free speech, and, as such, any alleged restriction on the exercise of free speech is permissible if the restriction is content-neutral and reasonable. *International*

sections of the FAC that reference the documents, when ruling on a motion pursuant to Federal Rule of Civil Procedure 12(b)(6).

(14 of 123), Page 14 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 14 of 123
Case 2:23-cv-06828-TJH-MAA   Document 31   Filed 03/25/24   Page 4 of 5   Page ID
#:156

*Society for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679 (1992).  The FAC does not allege that individuals with other viewpoints than those of Plaintiffs' who were not engaging in the buyback event were permitted to stay at the event as a means of supporting it.  In other words, the FAC does not allege that the City or any City official asked Plaintiffs to leave due to their viewpoints – the City was merely limiting attendance to individuals lawfully participating in the buyback event, regardless of their viewpoints.  Imposing such a restriction was reasonable and in furtherance of the government's substantial interest in promoting public safety.

**C.      Plaintiffs' First Amended Complaint and Opposition to Defendants' Motion to Dismiss Were Untimely.**

Federal Rule of Civil Procedure 15 states that a party may amend a pleading once, as a matter of right, no later than 21 days after serving it, or "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  FED. R. CIV. P. 15(a)(1)(A)(B).  All other cases require a written stipulation between the parties or leave of court.  FED. R. CIV. P. 15(a)(2). Defendants previously filed and electronically served their Motion to Dismiss Plaintiffs' Complaint on January 22, 2024.  (Dkt. 20.)  Twenty-one days after this was February 12, 2024.  However, Plaintiffs did not file their FAC until February 16, 2024, which was past the 21-day deadline.  (First Amended Complaint [Dkt. 24].)  Plaintiffs' counsel did not meet and confer with Defendants' counsel prior to filing their late FAC, thereby forcing Defendants to file a second Motion to Dismiss.  (Declaration of Delaney R. Satz [Dkt. 26-2], ¶ 7.) Furthermore, the parties did not stipulate to this late filing, and Plaintiffs did not seek leave of court to do so.  *Id.*

Despite the late filing, Defendants filed their Motion to Dismiss Plaintiffs' First Amended Complaint on March 1, 2024.  (Dkt. 26.)  Plaintiffs were required to file any opposition to the Motion on or by March 11, 2024.  However, Plaintiffs

(15 of 123), Page 15 of 123  Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 15 of 123
Case 2:23-cv-06828-TJH-MAA   Document 31   Filed 03/25/24   Page 5 of 5   Page ID
#:157

did not file their Opposition until March 15.  (Dkt. 30.)  Plaintiffs should not be permitted to continuously disregard the court rules and filing deadlines.

## III.  CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court dismiss the FAC in its entirety without leave to amend.


DATED:  March 25, 2024                     SARAH J. KNECHT, City Attorney


                                           By _____/s/ Delaney R. Satz_____
                                              Delaney R. Satz
                                              Deputy City Attorney
                                              Attorneys for City of Santa Barbara

1 Joel S. Farkas, Esq. (S.B. # 244032)
2 5404 Whitsett Avenue #46
3 Valley Village, California 91607
   Tel: (310) 621-6654
4 Fax: (818) 495-2513

5 Attorney for Plaintiffs

6

7

8

9 UNITED STATES DISTRICT COURT

10 CENTRAL DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12 BRUCE BOYER, an individual; DAVID WAYNE GRIGGS, an individual; KIMBERLY COLLEEN GRIGGS, an individual; and JONATHAN BOYER, an individual, | Case No. 2:23-cv-06828-TJH-MAA |
| | |
| Plaintiffs | PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT |
| vs. | |
| CITY OF SANTA BARBARA; SANTA BARBARA POLICE DEPARTMENT; JOHNS HOPKINS CENTER FOR GUN VIOLENCE SOLUTIONS, successor in interest of The Coalition Against Gun Violence, | Date: April 1, 2024
Dept.: 9C
Judge: Hon. Terry J. Hatter, Jr. |
| Defendants | |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO DISMISS
1

Plaintiffs Bruce Boyer, David Wayne Griggs, Kimberly Colleen Griggs, and Jonathan Boyer (collectively, "Plaintiffs") submit the following memorandum of Points and Authorities in support of their Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  Introduction

In their first amended complaint ("FAC"), Plaintiffs allege that their First Amendment, Fourth Amendment, and Fourteenth Amendment rights were violated at a gun buyback event at the Earl Warren Showgrounds in Santa Barbara, California ("the event") when Defendants City of Santa Barbara, Santa Barbara Police Department, and Johns Hopkins Center for Gun Violence Solutions, successor in interest of the Coalition Against Gun Violence (collectively, "Defendants") seized Plaintiffs' toy guns, refused to give $100 gift cards in exchange for the toy guns, and ordered Plaintiffs to leave the event under threat of arrest.

OPPOSITION TO MOTION TO DISMISS
2

(18 of 123), Page 18 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 18 of 123
Case 2:23-cv-06828-TJH-MAA    Document 30    Filed 03/15/24    Page 3 of 10    Page ID
#:134

Contrary to the assertions of Defendants in their Motion to Dismiss,

- Plaintiffs specifically allege the manner in which their speech was restricted by Defendants;

- No substantial government interest was advanced when Defendants ordered Plaintiffs to leave the event, under threat of arrest;

- No substantial government interest was advanced when Defendants ordered Plaintiffs to leave the event;

- Plaintiffs sufficiently allege a Monell claim under 42 U.S.C. section 1983;

Plaintiffs have properly alleged a claim for violation of their Constitutional rights under 42 U.S.C. section 1983. If, however, the Court determines that the allegations in Plaintiffs' FAC do not adequately state a claim, Plaintiffs request leave to amend in order that they may endeavor to so.

II.    **Plaintiffs specifically allege the manner in which their speech was restricted by Defendants.**

Contrary to Defendants' assertions in their Motion to Dismiss, Plaintiffs <u>do not</u> allege or contend that the sale and/or exchange of firearms (or toy guns), as well as the refusal to engage in the sale and/or exchange of firearms (or toy guns), is "speech" within the meaning of the First Amendment. Further, Plaintiffs <u>do not</u> allege or contend that the exchange of guns for money constitutes commercial speech. Rather, Plaintiffs allege and contend that they were deprived of their freedom of speech under the First Amendment when Defendants ordered Plaintiffs to leave the event, under threat of arrest. Plaintiffs wished to remain at the event in protest, and to voice their opposition to it (FAC, ¶¶ 22, 24, 27).

In ordering Plaintiffs to leave the event, under threat of arrest, Defendants discriminated against Plaintiffs' speech based on viewpoint. Such discrimination is presumptively unconstitutional. See *Boos v. Barry*, 485 U.S. 312 (1988). In *Rosenberger v. Rectors and Visitors of the University of Virginia*, 515 U.S. 819 (1995), the Supreme Court declared: "When the government targets not subject matter but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant. Viewpoint discrimination is

OPPOSITION TO MOTION TO DISMISS
4

thus an egregious form of content discrimination. The government

must abstain from regulating speech when the specific motivating

ideology or the opinion or perspective of the speaker is the rationale for

the restriction."

Here, it is evident that Plaintiffs were discriminated against based

on their viewpoint. Plaintiffs were threatened with arrest and ordered

to leave the event solely because Plaintiffs wished to voice a viewpoint

contrary to that of Defendants. Plaintiffs do not allege that they caused

any disturbance at the event, that they made any threats, or that they

even raised their voices. Plaintiffs simply offered their toy guns for

exchange, as directed by advertisements for the event and Defendants,

and, after the toy guns were seized, Plaintiffs sought to remain at the

event and voice their dissent (FAC, ¶¶ 14, 17, 19, 22).

As Plaintiffs posed no threat to Defendants, or other event

participants, it is evident that Defendants ordered Plaintiffs to leave in

order to silence them, to deprive them of their freedom of speech, their

right to protest.

OPPOSITION TO MOTION TO DISMISS

5

(21 of 123), Page 21 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 21 of 123
Case 2:23-cv-06828-TJH-MAA Document 30 Filed 03/15/24 Page 6 of 10 Page ID
#:137

### III. Defendants' assertion that there was a substantial government interest in ordering Plaintiffs to leave the event is wholly without merit.

Plaintiffs were acting lawfully, and peacefully, throughout their time at the event. Nothing is alleged to the contrary. No substantial government interest was advanced when Defendants ordered Plaintiffs to leave the event, and ordering Plaintiffs to leave did nothing to promote public safety, as Defendants posed no threat whatsoever to Defendants, or to other participants at the event.

Beyond that, there were less extensive actions Defendants could have taken that would have allowed Plaintiffs to remain at the event and voice their dissent, while not interfering with other participants at the event or compromising public safety.

Though there was ample space at the event to allow for dissenters to occupy some area, however small or remote, in which they could peacefully assemble and protest, Defendants made no provision for the expression of alternative viewpoints. (See Declaration of Bruce Boyer, ¶ 8.)

Furthermore, the fact that there was a "restricted area" at the

OPPOSITION TO MOTION TO DISMISS

6

event, where law enforcement personnel cleared and stored the exchanged firearms, makes clear that public safety concerns were not furthered by allowing peaceful protestors to assemble in an area outside the "restricted area." (See Declaration of Bruce Boyer, ¶ 3, 4.)

Plaintiffs' speech was restricted in that they were not permitted to remain at the event and peacefully voice their opposition to it. A space could have been designated in which they could remain on the grounds. Requiring that they leave the grounds is clearly "more extensive than is necessary to serve" the important government interest of promoting public safety. See *Nordyke v. Santa Clara County,* 110 F.3d 707, 711.

While Plaintiffs do not allege facts in their FAC regarding the "restricted area" or the existence of ample space at the event to allow for peaceful protest, such allegations could be made if the Court deems it necessary to adequately state a claim.

## IV.    Plaintiffs sufficiently allege a Monell claim under 42 U.S.C. section 1983.

Contrary to Defendants' assertions, Plaintiffs make specific allegations in the FAC regarding Defendants' policies, customs, or

OPPOSITION TO MOTION TO DISMISS

7

(23 of 123), Page 23 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 23 of 123
Case 2:23-cv-06828-TJH-MAA    Document 30    Filed 03/15/24    Page 8 of 10    Page ID
#:139

practices that lead to the Constitutional violations, as alleged. In

paragraph 25 of the FAC, Plaintiffs allege as follows: "The concerted

manner in which Defendants dealt with Plaintiffs and their toy "guns"

was indicative of clear policies and guidelines having been established

to deal with such situations. Each individual played their part and

there was little room for improvisation. Each directive was firmly and

bluntly articulated in such a way it appeared to be rehearsed." (FAC, ¶

25.) Prior to initial disclosures and potential further discovery,

Plaintiffs have articulated a substantial basis as to the existence of

policies, customs, and practices governing Defendants' wrongful

behavior at the event. In addition, the lack of an alternative free

speech area, or any space allocated or made available for peaceful

protestors to assemble, is further indicative that by policy, custom, or

practice Defendants had no intention of allowing for dissenting

viewpoints at the event. (See Declaration of Bruce Boyer, ¶ 8).

## V.    Conclusion.

Plaintiffs have met adequately stated a claim for relief under 42

U.S.C. section 1942. If, however, the Court determines that additional

OPPOSITION TO MOTION TO DISMISS

8

allegations are necessary, Plaintiffs respectfully request that the Court grant leave to amend so that Plaintiffs may allege additional details related to the relevant events.

Date: 3/15/2024                    Respectfully submitted,

_____
Joel S. Farkas
Attorney For Plaintiffs

OPPOSITION TO MOTION TO DISMISS

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs Bruce Boyer, David Wayne Griggs, Kimberly Colleen Griggs, and Jonathan Boyer, certifies that this brief contains 1369 words, which complies with the word limit of L.R. 11-6.1.


Dated: March 15, 2024          By_____

                                        Joel S. Farkas
                                        Attorney for Plaintiffs


.

OPPOSITION TO MOTION TO DISMISS
10

(26 of 123), Page 26 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 26 of 123
Case 2:23-cv-06828-TJH-MAA Document 30-1 Filed 03/15/24 Page 1 of 11 Page
ID #:142

Joel S. Farkas, Esq. (S.B. # 244032)

jojo@licit.us

5404 Whitsett Avenue #46

Valley Village, California 91607

Tel: (310) 621-6654

Fax: (818) 495-2513

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE BOYER, an individual; DAVID WAYNE GRIGGS, an individual; KIMBERLY COLLEEN GRIGGS, an individual; and JONATHAN BOYER, an individual,<br><br>                              Plaintiffs<br><br>vs.<br><br>CITY OF SANTA BARBARA; SANTA BARBARA POLICE DEPARTMENT; JOHNS HOPKINS CENTER FOR GUN VIOLENCE SOLUTIONS, successor in interest of The Coalition Against Gun Violence,<br><br>                              Defendants | Case No. 2:23-cv-06828-TJH-MAA<br><br>PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT<br><br>Date: April 1, 2024<br><br>Dept.: 9C<br><br>Judge: Hon. Terry J. Hatter, Jr. |

1

## DECLARATION OF BRUCE BOYER

I, Bruce Boyer, declare as follows:

1. I am the plaintiff in this action. I have personal knowledge of the facts stated in this declaration, and, if called as a witness, could and would testify competently to those facts.

2. As described in the operative complaint in this action, I attended a so-called "gun buyback" event ("the event") at the Earl Warren Showgrounds in Santa Barbara, California on August 21, 2021.  In addition to the description of events alleged in the complaint, I can add some additional details.

3. At the event, there was an area cordoned off by police tape ("restricted area"). In this area, several tables were set up for police officers to check and clear the firearms collected from participants at the event. Upon collecting a firearm from an event participant, the firearm was brought to the restricted area and received by an officer on duty there. The officer then would inspect the firearm and clear it by looking to see if there was any

(28 of 123), Page 28 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 28 of 123
Case 2:23-cv-06828-TJH-MAA Document 30-1 Filed 03/15/24 Page 3 of 11 Page
ID #:144

ammunition in it, and, if necessary, removing the ammunition. The cleared firearms were then placed in barrels within the restricted area. The public, including event participants, were not permitted to enter this area. Only law enforcement personnel area. There was a clear demarcation between this restricted area and the non-restricted area outside it.

4. Neither my co-plaintiffs nor I ever requested to enter the restricted area, made any attempt to enter it, or had any intention of entering it. I well understand that it would be a public safety issue to allow the public inside the restricted area.

5. Several city officials, as well as a couple media members, were present at the event while I was there.

6. The Santa Barbara Police Department officer referenced in paragraph 21 of the operative complaint was Lieutenant Aaron Baker.

7. Lieutenant Baker was present and participating in the conversation I had with the Coalition Against Guns Violence representative at the event. In that conversation, I stated that I

(29 of 123), Page 29 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 29 of 123
Case 2:23-cv-06828-TJH-MAA Document 30-1 Filed 03/15/24 Page 4 of 11 Page
ID #:145

was at the event, along with my co-plaintiffs, to voice opposition to it and wished to remain there to peacefully do so.

8. No provision was made for the expression of alternate viewpoints at the event. There was no area allocated for those wishing to voice dissent. There was ample space at the event to allow dissenters to occupy some area, however small or remote, in which they could peacefully assemble and protest.

9. A few days after the event, I read an article about the event on the Santa Barbara News-Press website. The article includes a photograph of Coalition Against Gun Violence representatives addressing remarks to individuals gathered at the event. The article also includes mention of the fact that "toy" guns were among the firearms handed over at the event and that it was beneficial for these to be removed from the street as they posed safety hazards of their own. A true and correct copy of the article is attached as Exhibit 1.

I declare under penalty of perjury that the foregoing is true and correct

4

Declaration of Bruce Boyer

(30 of 123), Page 30 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 30 of 123
Case 2:23-cv-06828-TJH-MAA    Document 30-1    Filed 03/15/24    Page 5 of 11   Page
ID #:146

1  and was executed on March 10, 2024 in Los Angeles, California.

2

3  _Bruce Boyer_

4  Bruce Boyer

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

# EXHIBIT 1

(32 of 123) Page 32 of 123
Case 2:23-cv-06828-TJH-MAA    Document 30-1    Filed 03/15/24    Page 7 of 11    Page
ID #:148



VIRTUAL EDITION    LOCAL ⌄    LIFE ⌄    SPORTS ⌄    SPECIAL EDITIONS ⌄    OBITUARIES ⌄    ARCH

Home  >  Local  >  Hundreds of guns collected at Earl Warren Showgrounds buyback event

Local

# Hundreds of guns collected at Earl Warren Showgrounds buybac

by Madison Hirneisen    |    August 22, 2021    |    0 comment

*Note that these people are at the event. They are not participants they are doing political expression/freedom speech!*

💬 0 comment        0 ♡        f 🐦 🅿 ✉



**KENNETH SONG/NEWS-PRESS PHOTOS**

This website uses cookies to improve your experience. Click "Accept" to agree and continue.    Accept

Read More

Case 2:23-cv-06828-TJH-MAA    Document 30-1    Filed 03/15/24    Page 8 of 11    Page ID #:149

Officers collected 127 long guns, 106 handguns and five assault rifles between 8 a.m. and noon Saturday. One additional gun accepted after the event ended, according to an organizer, bringing the total number of weapons surrendered to 239.

The event, now in its sixth year, is organized annually by the Coalition Against Gun Violence to give community members opportunity to turn in unwanted weapons. The process is completely anonymous, and community members simply drive through the Earl Warren Showgrounds lot, pop the trunk and allow SBPD officers to remove the weapons before driving away. This year, participants received a $100 gift card to Smart and Final for every long rifle and handgun, and a $200 gift card for assault rifle.

This website uses cookies to improve your experience. Click "Accept" to agree and continue.      Accept

Read More

VIRTUAL EDITION    LOCAL ⌄    LIFE ⌄    SPORTS ⌄    SPECIAL EDITIONS ⌄    OBITUARIES ⌄



**A combination of long guns, handguns, toy guns, ammo, and more was collected during the event.**

Following Saturday's collection, the SBPD will check the serial number on each weapon to see if it was involved in a crime was stolen. Then, the weapons will be transported to a facility in Los Angeles where they are destroyed and turned into scra

Officer Aaron Baker of the SBPD told the News-Press following the event Saturday that the department is always open to collecting weapons at any time of the year. He said if someone has an unwanted weapon in their home they would like to g of, they don't have to wait for the next buyback event — they can simply bring it to the station and officers will take care of

"If someone feels uncomfortable having a weapon in their home, the fact that we're here to take that weapon from them w questions asked, and allow them to walk away with a gift card to the local store, it seems to ease a lot of burden from some these people," Mr. Baker said. "And if nothing else, that's huge. Whether we solve a crime or get someone's stolen property the fact that we're taking away a pressure that people are feeling just from having a piece of metal at their house, it's a big And it's a service that we can continue to provide." *not participating grandstanding*

Various City and County officials attended Saturday's event in support of the buyback effort, praising those who handed ov their weapons in order to form a safer community.

"One less gun is our goal," Christina Pizarro, the president of the Democratic Women of Santa Barbara, told the News-Pres

This website uses cookies to improve your experience. Click "Accept" to agree and continue.    Accept

Read More

Hundred of guns collected at Earl Warren Showgrounds buyback event - Santa Barbara News-Press

VIRTUAL EDITION    LOCAL ⌄    LIFE ⌄    SPORTS ⌄    SPECIAL EDITIONS ⌄    OBITUARIES ⌄    ⌃



James Kyriaco, a member of the Goleta City Council, acknowledged last week's burglary at the Goodland Guns shop in Gol during his comments on Saturday, noting that many residents feel anxious knowing that those guns have yet to be found.

While officers are still searching for the missing weapons, he said Saturday's event allows the community to breathe a littl easier knowing that 239 weapons will not contribute to violence in the community.

"What's so wonderful about what happened today is there's 239 fewer points of anxiety," Mr. Kyriaco said. "There are 239 accidents that won't happen today or some day in the future because of the work of the coalition, because of the support c city, because of the support of our county partners."

The City of Santa Barbara donated $10,000 in support of this event, topping the list of supporters. Other supporters includ Supervisors Das Williams, Gregg Hart and Joan Hartmann, Carpinteria Mayor Wade Nomura, Goleta Mayor Paula Perotte, tl City of Goleta, District Attorney Joyce Dudley, the Democratic Women of Santa Barbara, Santa Barbara Women's Political Committee and Smart and Final.

During her comments, Ms. Dudley marveled at the number of weapons collected on Saturday, pointing out that more than dozen guns handed over were "toy" weapons, like BB or pellet guns. She said that though these guns are not real, it can be v hard for an officer to tell the difference, and it can lead to very devastating outcomes.

This website uses cookies to improve your experience. Click "Accept" to agree and continue.    Accept

Read More

Page 35

8/24/2021   Hundreds of guns collected at Earl Warren Showgrounds buyback event - Santa Barbara News-Press

VIRTUAL EDITION    LOCAL ⌄    LIFE ⌄    SPORTS ⌄    SPECIAL EDITIONS ⌄    OBITUARIES ⌄

"If a law enforcement officer comes upon a situation and sees a gun, and believes that gun to be a real gun — many of these guns look so authentic, I couldn't tell the difference — so many devastating things follow that interaction," Ms. Dudley said. I'm actually celebrating the fact that we got so many of those guns off the street, and out of people's hands."

The district attorney added that when thinking about gun violence and guns in the home, three incidents come to mind — suicides, inadvertent killings of loved ones and homicides. By surrendering weapons, the community members who particip in Saturday's event made a "big difference," Ms. Dudley said.

"I want to thank every single one of those people that got up this morning, put the guns in their car and (came) down here, Dudley said. "They're all heroes in my mind."

email: mhirneisen@newspress.com

💬 0 comment      0 ♡      f 🐦 📌 ✉

**MADISON HIRNEISEN**

News-Press Staff Writer

previous post                                                                      ne:
**On safari: A (jungle) cruise down State Street**        **Americans warned to avoid Kabul a**

This website uses cookies to improve your experience. Click "Accept" to agree and continue.      Accept

Read More

SARAH J. KNECHT, City Attorney (SBN 138275)
Tom R. Shapiro, Assistant City Attorney (SBN 127383)
Delaney R. Satz, Deputy City Attorney (SBN 335899)
740 State Street, Suite 201
Post Office Box 1990
Santa Barbara, California 93102-1990
Telephone: (805) 564-5326
Fax: (805) 564-5426
Email: tshapiro@santabarbaraca.gov
       dsatz@santabarbaraca.gov

Attorneys for Defendants City of Santa Barbara
and Santa Barbara Police Department

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE BOYER, an individual; DAVID WAYNE GRIGGS, an individual; KIMBERLY COLLEEN GRIGGS, an individual; and JONATHAN BOYER, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF SANTA BARBARA; SANTA BARBARA POLICE DEPARTMENT; JOHNS HOPKINS CENTER FOR GUN VIOLENCE SOLUTIONS, successor in interest of The Coalition Against Gun Violence; and DOES 1 to 101,<br><br>Defendants. | CASE NO. 2:23-cv-06828-TJH-MAA<br><br>**DEFENDANTS CITY OF SANTA BARBARA AND SANTA BARBARA POLICE DEPARTMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>(FRCP 12(b)(6))<br><br>Date: April 1, 2024<br>Time: Under Submission<br>Place: Courtroom 9C, 9th Floor<br>350 W. 1st Street, Los Angeles<br>Judge: Hon. Terry J. Hatter, Jr.<br><br>Complaint Filed: 8/18/23<br>FAC Filed: 2/16/24 |

TO PLAINTIFFS AND THEIR ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that on April 1, 2024, or as soon thereafter as the matter may be heard in Courtroom 9C, located at 350 W. 1st Street, 9th Floor, Los Angeles, CA, 90012, Defendants City of Santa Barbara and Santa Barbara Police Department (the "City" or "Defendants") will move the Court to dismiss

Plaintiff's First Amended Complaint in its entirety based on failure to state a claim against the City pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Motion is made following the conference of counsel pursuant to Central District Local Rule 7-3, which took place on February 28, 2024.  See attached Declaration of Delaney R. Satz.

The Motion will be based on this Notice of Motion, the Memorandum of Points and Authorities filed concurrently herewith, the City's Request for Judicial Notice, all pleadings, files and records in this proceeding, and any argument or evidence that may be presented to the Court at the time of the hearing.


DATED:  March 1, 2024                    Sarah J. Knecht, City Attorney


                                         By _____/s/ Delaney R. Satz_____
                                            Delaney R. Satz
                                            Deputy City Attorney
                                            Attorneys for City of Santa Barbara

(39 of 123), Page 39 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 39 of 123
Case 2:23-cv-06828-TJH-MAA   Document 26-1   Filed 03/01/24   Page 1 of 13   Page
ID #:97

SARAH J. KNECHT, City Attorney (SBN 138275)
Tom R. Shapiro, Assistant City Attorney (SBN 127383)
Delaney R. Satz, Deputy City Attorney (SBN 335899)
740 State Street, Suite 201
Post Office Box 1990
Santa Barbara, California  93102-1990
Telephone:  (805) 564-5326
Fax:  (805) 564-5426
Email:  tshapiro@santabarbaraca.gov
            dsatz@santabarbaraca.gov

Attorneys for Defendant, City of Santa Barbara
and Santa Barbara Police Department

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE BOYER, an individual; DAVID WAYNE GRIGGS, an individual; KIMBERLY COLLEEN GRIGGS, an individual; and JONATHAN BOYER, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF SANTA BARBARA; SANTA BARBARA POLICE DEPARTMENT; JOHNS HOPKINS CENTER FOR GUN VIOLENCE SOLUTIONS, successor in interest of The Coalition Against Gun Violence; and DOES 1 to 101, <br><br> Defendants. | CASE NO. 2:23-cv-06828-TJH-MAA <br><br> **DEFENDANTS CITY OF SANTA BARBARA AND SANTA BARBARA POLICE DEPARTMENT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** <br><br> (FRCP 12(b)(6)) <br><br> Date:  April 1, 2024 <br> Time: Under Submission <br> Place: Courtroom 9C, 9th Floor <br>            350 W. 1st Street, Los Angeles <br> Judge: Hon. Terry J. Hatter, Jr. <br><br><br> Complaint Filed:  8/18/23 <br> FAC Filed:  2/16/24 |

Defendants City of Santa Barbara and Santa Barbara Police Department

submit the following Memorandum of Points and Authorities in support of their

Motion to Dismiss Plaintiffs' First Amended Complaint, pursuant to Federal Rule

of Civil Procedure 12(b)(6).

(40 of 123), Page 40 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 40 of 123
Case 2:23-cv-06828-TJH-MAA   Document 26-1   Filed 03/01/24   Page 2 of 13   Page
ID #:98

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs Bruce Boyer, David Wayne Griggs, Kimberly Colleen Griggs, and Jonathan Boyer (collectively "Boyers/Griggs" or "Plaintiffs") allege that their First Amendment rights were violated at a gun buyback event at the Earl Warren Showgrounds in Santa Barbara, California, when the Defendants refused to give $100 gift cards to Boyers/Griggs in exchange for toy guns and requested that they leave the event.  Facing a Motion to Dismiss under 12(b)(6), Plaintiffs then filed a late First Amended Complaint ("FAC").  The FAC fails to rectify the infirmities identified in Defendants' first Motion to Dismiss.

In addition to being untimely, the FAC fails to allege how these circumstances involved the restriction of Boyers/Griggs' speech and, even if there was a restriction of speech, how such restriction was "more extensive than is necessary to serve" the important government interest of keeping firearms off the street, preventing suicides, homicides, and other crimes.  *See Nordyke v. Santa Clara County*, 110 F.3d 707, 713 (9th Cir. 1997).  Further, the Earl Warren Showgrounds is not a traditional or designated forum for free speech and, consequently, the showgrounds are not traditionally open to expressive activity.  *See Camenzind v. California Exposition and State Fair*, 84 F.4th 1102, 1109 (9th Cir. 2023).  Lastly, the Santa Barbara Police Department is not a suable entity and cannot be sued in this context.  As this is now Plaintiffs' second attempt to state a viable claim, no further leave to amend should be granted.

## II.   STATEMENT OF FACTS

As this is a 12(b)(6) Motion to Dismiss the FAC, the following facts are taken from the FAC and are properly subject to judicial notice.

On August 21, 2021, the City of Santa Barbara and the Santa Barbara Police Department (collectively the "City" or "Defendants") and The Coalition Against Gun Violence ("CAGV") held a gun buyback event at the Earl Warren

(41 of 123), Page 41 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 41 of 123
Case 2:23-cv-06828-TJH-MAA   Document 26-1   Filed 03/01/24   Page 3 of 13   Page
ID #:99

Showgrounds in Santa Barbara, California. (FAC, ¶ 12.) The advertisements for the event described the event as a "gun buyback" without specifying the types of guns. (*Id.* at 14.) People participated in the event by placing their guns in the trunks of their vehicles, forming a line with their vehicles, and, when arriving at the exchange area, the drivers would open the trunks of their vehicles. (*Id.* at 17.) Then an individual, believed to be a police officer, would remove the guns from the trunks and take them to an inspection area. (*Id.*) After inspection, the police officer would return to the vehicle and give the driver a $100 gift card for each gun or piece of gun surrendered. (*Id.*)

Plaintiffs Bruce Boyer, David Wayne Griggs, Kimberly Colleen Griggs, and Jonathan Boyer are members of an organization known as the "Sons of Liberty LA (SOLLA)". (FAC, ¶ 15.) On August 21, 2021, Plaintiffs attended the buyback event. (*Id.* at 16.) Bruce Boyer had several toy guns within a box in the trunk of his automobile. (*Id.* at 20.) The police officer, after inspecting the toy guns, returned to Boyer's vehicle and told him that he would not be given gift cards for the toy guns. (*Id.* at 21.) The other Plaintiffs, David Griggs, Kimberly Griggs, and Jonathan Boyer were also in the gun exchange line and insisted that they were entitled to the gift cards in exchange for toy guns. (*Id.* at 23.) Boyers/Griggs were informed that if they did not leave the event, they would be arrested. (*Id.* at 24.) They left the event, without their toy guns. (*Id.* at 25-26.)

**Earl Warren Showgrounds.** The following are facts judicially noticeable, and a separate Request for Judicial Notice ("RJN") is filed concurrently herewith. As stated on its website, the Earl Warren Showgrounds is a multi-use community event center which provides facilities for community events, meetings, and emergency response, including ticketed events such as fairs, expositions, and horse shows. (Satz Decl., ¶ 9, Ex. A.) The Earl Warren Showgrounds are owned by the State of California. (Satz Decl., ¶ 10, Ex. B.)

///

(42 of 123), Page 42 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 42 of 123
Case 2:23-cv-06828-TJH-MAA  Document 26-1  Filed 03/01/24  Page 4 of 13  Page
ID #:100

## III.  ARGUMENT

### A.  Plaintiffs' First Amended Complaint Was Untimely.

Federal Rule of Civil Procedure 15 states that a party may amend a pleading once, as a matter of right, no later than 21 days after serving it, or "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A)(B).  All other cases require a written stipulation between the parties or leave of court.  Fed. R. Civ. P. 15(a)(2).  Defendants previously filed and electronically served their Motion to Dismiss Plaintiffs' Complaint on January 22, 2024.  (Dkt. 20.)  21 days after this is February 12, 2024.  However, Plaintiffs did not file their FAC until February 16, 2024, which is past the 21-day deadline.  (First Amended Complaint [Dkt. 24].)  Plaintiffs' counsel did not meet and confer with Defendants' counsel prior to filing their late FAC, thereby forcing Defendants to file a second Motion to Dismiss. (Declaration of Delaney R. Satz ["Satz Decl."], ¶ 7.)  Furthermore, the parties did not stipulate to the late filing, and Plaintiffs did not seek leave of court.  *Id.*  Even if the Court were to consider Plaintiffs' FAC on the merits, the FAC nonetheless did not cure the deficiencies identified in Defendants' first Motion to Dismiss, and the Court should grant Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint, without further leave to amend.

### B.  The First Amended Complaint Should Be Dismissed for Failure to State a Claim.

A complaint may be dismissed for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  On a motion to dismiss under Rule 12(b)(6), a court must accept as true all factual allegations pleaded in the complaint and must construe them "in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996); *see also Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116, 1120–21 (9th Cir. 2007). Dismissal under Rule 12(b)(6) may be based on either "(1) lack of a cognizable

(43 of 123), Page 43 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 43 of 123
Case 2:23-cv-06828-TJH-MAA   Document 26-1   Filed 03/01/24   Page 5 of 13   Page
ID #:101

legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Group v. Delta Dental Plan of Calif., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Supreme Court has interpreted this rule to require that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Although a complaint generally need not contain detailed factual allegations, "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 570 (citations and internal quotation marks omitted). Similarly, a court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions…While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 678-679; *see also Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Plaintiffs bring a single cause of action, alleging that Defendants violated "their rights to free speech and freedom of assembly, in violation of the First Amendment of the United States Constitution, their protection from unreasonable seizures, in violation of the Fourth Amendment of the United States Constitution, and their right to liberty, in violation of the Fourteenth Amendment of the United States Constitution." (FAC, ¶ 29.) Plaintiffs further allege that the buyback event

(44 of 123), Page 44 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 44 of 123
Case 2:23-cv-06828-TJH-MAA    Document 26-1    Filed 03/01/24    Page 6 of 13    Page
ID #:102

"was unconstitutional as it was conducted by a private political group—i.e.,
CAGV—with the imprimatur of a public municipality and its agency—i.e., Santa
Barbara and SBPD."  (*Id.* at 15.)

Assuming Plaintiffs' factual allegations are true, they nevertheless fail to state
a claim for relief that is plausible on its face.  It is entirely unclear from the face of
the FAC what conduct Plaintiffs are alleging was unconstitutional.  For instance,
whether Defendants' refusal to exchange the toy guns for gift cards was the alleged
violation, or if Defendants' request that Plaintiffs leave the event was the alleged
violation.  Regardless, for reasons explained more fully below, both arguments fail,
and the FAC should be dismissed without leave to amend.

C.    **The First Amended Complaint Fails Under** *Monell v. New York*
     *City Department of Social Services*.

In order to assert civil rights liability under 42 U.S.C. section 1983 against the
City, Plaintiffs must allege that the City had a policy, custom, or practice leading to
the alleged First Amendment violation.  *See Saved Magazine v. Spokane Police
Department*, 19 F.4th 1193, 1201 (9th Cir. 2021); *Monell v. New York City Dept. of
Social Servs.*, 436 U.S. 658, 692 (1978).  Plaintiffs simply allege that, "The
concerted manner in which Defendants dealt with Plaintiffs and their toy 'guns' was
indicative of clear policies and guidelines having been established to deal with such
situations. Each individual played their part and there was little room for
improvisation. Each directive was firmly and bluntly articulated in such a way it
appeared to be rehearsed."  (FAC, ¶ 25.)  This is insufficient, absent additional
factual allegations, to survive a 12(b)(6).  *See Villarreal v. County of Monterey*, 254
F.Supp.3d 1168, 1195 (N.D. Cal. 2017) (granting motion to dismiss pursuant to
Federal Rule of Civil Procedure 12(b)(6) because the complaint only mentioned one
alleged government policy and therefore failed to sufficiently plead a *Monell* claim).

Furthermore, Plaintiffs have not asserted a claim against any individual
officers.  However, even if they had, the officers would be entitled to qualified

(45 of 123), Page 45 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 45 of 123
Case 2:23-cv-06828-TJH-MAA   Document 26-1   Filed 03/01/24   Page 7 of 13   Page
ID #:103

immunity.  "Qualified immunity…shields government officials performing discretionary functions from liability for civil damages[.]".  *Saved Magazine*, 19 F.4th at 1198 (quoting *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994)).  When determining whether an officer is entitled to qualified immunity, the courts ask, "(1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct."  *Id.* Plaintiffs simply allege that the buyback was "unconstitutional as it was conducted by a private political group" and that Defendants' refusal to purchase their fake guns and request they leave the event "violated their freedom of speech, assembly, and liberty[.]".  (FAC, ¶¶ 15, 26.)  As explained in more detail below, the sale and/or exchange of guns does not constitute speech within the meaning of the First Amendment.  Plaintiffs have failed to show there was a violation of a constitutional right and their FAC should be dismissed for failure to state a claim.

### D.     The First Amended Complaint Does Not Allege Speech Within the Meaning of the First Amendment.

As alleged in the FAC, this case involves the attempted exchange of toy guns for gift cards.  Although there appears to be no authority directly on point with respect to fake or as in this case, toy guns, cases evaluating the sale and/or exchange of real guns are analogous.  In *B&L Productions, Inc. v. Newsom*, the plaintiffs operated gun shows around California, including on State-owned fairgrounds.  *B&L Productions, Inc. v. Newsom*, 661 F.Supp.3d 999, 1002–03 (S.D. Cal. 2023). Plaintiffs sued for various causes of action, including an alleged First Amendment violation after the State introduced a bill that would prohibit the sale of firearms and ammunition at the State-owned fairgrounds.  *Id.* at 1005.  Defendants moved to dismiss plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Id.* The court granted defendants' motion to dismiss plaintiffs' First Amendment cause of action, *without leave to amend*, reasoning that the mere "act of exchanging money for a gun is not 'speech' within the meaning of the First Amendment[.]"  *Id.*

(46 of 123), Page 46 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 46 of 123
Case 2:23-cv-06828-TJH-MAA   Document 26-1   Filed 03/01/24   Page 8 of 13   Page
ID #:104

(quoting *Nordyke*, 110 F.3d at 710). Contrary to Plaintiffs' contentions, the sale and/or exchange of firearms, as well as the refusal to engage in the sale and/or exchange of firearms, is not considered speech under the First Amendment. As the court did in *B&L Productions, Inc.*, this Court should grant Defendants' Motion and dismiss Plaintiffs' FAC without leave to amend. Plaintiffs have already amended their Complaint once, which was after the 21-day deadline to do so, and nonetheless failed to cure the deficiencies.

### E. Even If the Exchange of Toy Guns Was Speech, There Was a Substantial Government Interest in Not Accepting the Toy Guns and Asking Plaintiffs to Leave the Event.

Plaintiffs may attempt to argue that the exchange of guns for money constitutes commercial speech. However, this argument similarly fails. *See B&L Productions, Inc.*, 661 F.Supp.3d at 1005. Even if the exchange of guns for money was considered commercial speech, Defendants had a substantial government interest in promoting public safety.

In commercial speech cases, the Ninth Circuit has developed a four-part analysis:

> For commercial speech to come within [the First Amendment], it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Nordyke*, 110 F.3d at 711 (citing *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 447 U.S. 557, 566 (1980)).

Assuming that appearing at the gun buyback event with toy guns was not unlawful or misleading, which is debatable, the Court must next consider whether Defendants hosting the gun buyback event, refusing to exchange the toy guns, and

(47 of 123), Page 47 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 47 of 123
Case 2:23-cv-06828-TJH-MAA   Document 26-1   Filed 03/01/24   Page 9 of 13   Page
ID #:105

asking Plaintiffs to leave the event was made to further a substantial governmental interest.  It seems without question that it was.

The purpose of the buyback was to reduce the number of firearms owned by individuals who were voluntarily surrendering them, thus furthering public safety and lowering the risk of suicide, homicide, and other crimes.  The courts have continuously held that the government has a "substantial interest in protecting the people from those who acquire guns illegally and use them to commit crimes resulting in injury or death of their victims."  *Nordyke*, 110 F.3d at 713.  The government interest in preventing suicide, homicide, and other crimes is "unquestionably important."  *See Washington v. Glucksberg*, 521 U.S. 702, 730–35 (1997) (recognizing the government's "unquestionably important" interest in preventing suicide); *Schall v. Martin*, 467 U.S. 253, 264 (1984) ("The legitimate and compelling state interest in protecting the community from crime cannot be doubted." (internal quotation marks omitted)); *United States v. Torres*, 911 F.3d 1253, 1263 (holding that the government's interests in crime control and public safety are "important").  Defendants hosting the gun buyback event was in furtherance of arguably one of the most substantial government interests: promoting public safety.

Furthermore, Defendants' refusal to exchange the toy guns and request that Plaintiffs leave the event directly advanced the government's substantial interest in promoting public safety and was not more extensive than necessary to serve that interest, to wit, exchanging real guns for gift cards.

### F.     The Earl Warren Showgrounds Are Not a Traditional or a Designated Public Forum for Free Speech.

As Plaintiffs have failed to state a claim showing their First Amendment rights were in fact violated, a forum analysis is not necessary.  Forum analysis is only necessary if the Court determines that the circumstances in this case involved a restriction of free speech under the First Amendment.  *Cornelius v. NAACP Legal*

(48 of 123), Page 48 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 48 of 123
Case 2:23-cv-06828-TJH-MAA    Document 26-1    Filed 03/01/24    Page 10 of 13    Page
ID #:106

*Defense and Educational Fund, Inc.*, 473 U.S. 788, 800 (1985) ("[T]he [Supreme] Court has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes.")  Even if Plaintiffs had sufficiently pled a cause of action under the First Amendment, which they have not, their arguments would nevertheless fail because the Earl Warren Showgrounds are a nonpublic forum and any alleged restriction on the exercise of free speech was reasonable and not imposed in an effort to chill speech based on its content.

When determining what type of forum a property is, the Supreme Court has looked to factors such as whether the forum has been traditionally made available for speech, the primary purpose of the forum, and the extent to which speech is compatible with the forum's usual functioning.  *United States v. Kokinda*, 497 U.S. 720, 727 (1990).  Traditional public forums are limited to public property that has "a principal purpose… [of] the free exchange of ideas."  *International Society for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679 (1992) (internal citations and quotation marks omitted).  Designated public forums consist of property that the government "has opened for expressive activity by part or all of the public[.]"  *Id.* at 678.  Restrictions in traditional and designated public forums "survive only if they are narrowly drawn to achieve a compelling state interest."  *Id.*  All other types of property are, in the Court's view, nonpublic forums and government-imposed restrictions of speech in these nonpublic forums will be upheld so long as they are reasonable and not made in an "effort to suppress the speaker's activity due to a disagreement with the speaker's view."  *Id.* at 679.

In *Camenzind v. California Exposition and State Fair*, 84 F.4th 1102, 1109 (9th Cir. 2023), the Ninth Circuit ruled that the enclosed portion of the fairgrounds in question were not considered a traditional public forum for First Amendment purposes, due to factors such as limited free public access, boundaries clearly marked by fencing, and limited hours of operation.  *Camenzind*, 84 F.4th at 1109.

(49 of 123), Page 49 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 49 of 123
Case 2:23-cv-06828-TJH-MAA Document 26-1 Filed 03/01/24 Page 11 of 13 Page
ID #:107

Similarly, here, the Earl Warren Showgrounds have limited public access and hours of operation, including for events such as fairs, expositions, and horse shows. (Satz Decl., ¶¶ 9, 10, A & B.) With respect to the gun buyback event, participants were given clear instructions to get in line, open their vehicle trunks, and wait for police to inspect the contents. (FAC, ¶ 17.) Forums such as this do not constitute traditional or designated public forums, and restrictions on speech will be upheld so long as they are reasonable and content-neutral. *International Society for Krishna Consciousness, Inc.*, 505 U.S. at 679.

Defendants refusing to exchange the toy guns and requesting that Plaintiffs leave the event was reasonable in order to promote efficiency and safety of the event, and did not relate to Plaintiffs' alleged viewpoints surrounding the event. Gun buyback events such as this inherently have the potential to pose safety risks (e.g., defective and/or unstable ammunition, accidental discharges, etc.), and Defendants have an interest in limiting entry to individuals who wanted to participate in the program. Plaintiffs have failed to assert that Defendants discriminated against them based on the content of their "speech".

### G. The Police Department Is Not a Proper Defendant.

It is also important to note that Santa Barbara Police Department is a department within the City of Santa Barbara and is therefore not an entity that may be sued. *See United States v. Kama*, 394 F.3d 1236, 1239-40 (9th Cir. 2005) (Ferguson J., concurring) ("municipal police departments and bureaus are generally not considered 'persons' within the meaning of 42 U.S.C. § 1983"); *Nelson v. Cty. of Sacramento*, 926 F.Supp.2d 1159, 1170 (E.D. Cal. 2013).

## IV. CONCLUSION

For the foregoing reasons, the FAC should be dismissed in its entirety without leave to amend.

/// 

///

DATED:  March 1, 2024.

SARAH J. KNECHT, City Attorney

By _____ /s/ Delaney R. Satz _____
Delaney R. Satz
Deputy City Attorney
Attorneys for City of Santa Barbara
and Santa Barbara Police Department

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants CITY OF SANTA BARBARA AND SANTA BARBARA POLICE DEPARTMENT, certifies that this brief contains 3,384 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated _____.

DATED:  March 1, 2024.                    SARAH J. KNECHT, City Attorney


By _____/s/ Delaney R. Satz_____
Delaney R. Satz
Deputy City Attorney
Attorneys for City of Santa Barbara
and Santa Barbara Police Department

SARAH J. KNECHT, City Attorney (SBN 138275)
Tom R. Shapiro, Assistant City Attorney (SBN 127383)
Delaney R. Satz, Deputy City Attorney (SBN 335899)
740 State Street, Suite 201
Post Office Box 1990
Santa Barbara, California  93102-1990
Telephone:  (805) 564-5326
Fax:  (805) 564-5426
Email:  tshapiro@santabarbaraca.gov
           dsatz@santabarbaraca.gov

Attorneys for Defendants City of Santa Barbara
and Santa Barbara Police Department

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE BOYER, an individual; DAVID WAYNE GRIGGS, an individual; KIMBERLY COLLEEN GRIGGS, an individual; and JONATHAN BOYER, an individual, | CASE NO. 2:23-cv-06828-TJH-MAA |
| Plaintiffs, | **DECLARATION OF DELANEY R. SATZ IN SUPPORT OF DEFENDANTS CITY OF SANTA BARBARA AND SANTA BARBARA POLICE DEPARTMENT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| vs. | |
| CITY OF SANTA BARBARA; SANTA BARBARA POLICE DEPARTMENT; JOHNS HOPKINS CENTER FOR GUN VIOLENCE SOLUTIONS, successor in interest of The Coalition Against Gun Violence; and DOES 1 to 101, | Date:  April 1, 2024 Time:  Under Submission Place:  Courtroom 9C, 9th Floor         350 W. 1st Street, Los Angeles Judge:  Hon. Terry J. Hatter, Jr. |
| Defendants. | Complaint Filed:  8/18/23 FAC Filed:  2/16/24 |

I, DELANEY R. SATZ, declare:

1.    I am an attorney at law, admitted to practice in the State of California and the Central District of California.  I am a Deputy City Attorney with the City of Santa Barbara and represent the City of Santa Barbara and the Santa Barbara Police Department in this matter.

2. The facts herein stated are personally known to me firsthand and, if called as a witness, I could and would competently testify hereto.

3. On January 11, 2024, I called counsel for Plaintiffs, Joel Farkas, to discuss the City's intention to file a Motion to Dismiss pursuant to FRCP 12(b)(6).

4. During my phone conversation with Mr. Farkas, I explained that I would be filing a 12(b)(6) Motion to Dismiss on behalf of the City. I told him that the Motion would be based on Plaintiffs' failure to state a claim showing Plaintiffs may be entitled to relief. Specifically, for failure assert a claim under *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978), and that the alleged events at issue do not constitute "speech" for purposes of the First Amendment. Mr. Farkas indicated he may be amenable to filing an amended complaint. Later that day, I emailed Mr. Farkas and stated that if he did not let me know by close of business on January 12 whether he intended to file an amended complaint and if not, the City would proceed with filing its Motion. Mr. Farkas did not respond to this email.

5. As a result of our meet and confer, and Mr. Farkas' failure to respond, the parties were unable to come to an agreement, necessitating Defendants' filing their First Motion to Dismiss. (Dkt. 20.)

6. Plaintiffs subsequently failed to file an opposition to Defendants' First Motion to Dismiss. On February 9, 2024, my office filed a Notice of No Opposition informing the Court of this. (Dkt. 23.)

7. However, on February 16, 2024, after the date allowed for amendments as of right, Plaintiffs filed a late First Amended Complaint ("FAC"). Prior to the filing of the FAC, Plaintiffs' counsel did not meet and confer with Defendants' counsel to stipulate to allow a later filing, nor did Plaintiffs seek leave of court to do so.

8. On February 21, 2024, I notified Mr. Farkas that Plaintiffs' FAC did not comply with Federal Rule of Civil Procedure 15 and that the City intended on

filing another motion to dismiss for the same reasons set forth in the City's previous Motion.  On February 28, 2024, the parties spoke further about the substance of the motion on the phone.  The parties were unable to come to an agreement, necessitating Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint.

9.    On March 1, 2024, my office downloaded a page from the Earl Warren Showgrounds' official website, located at https://earlwarren.com/about-us.  The webpage identifies the Earl Warren Showgrounds as a multi-use community event center which provides facilities for events, meetings, and emergency response efforts, including ticketed events such as fairs, expositions, and horse shows.  A true and correct copy of this webpage is attached hereto as **Exhibit A**.

10.    On January 16, 2024, my office downloaded pages of a study from the City of Santa Barbara's website, located at https://santabarbaraca.gov/sites/default/files/documents/Public%20Works/Engineering/SBPD-Summary%20of%20Preliminary%20Environmental%20Review-Earl%20Warren%20Showgrounds%20Site%20Alternative.pdf.  The study identifies the Earl Warren Showgrounds as a multi-use community event center which provides facilities for events, meetings, and emergency response efforts, including ticketed events such as fairs, expositions, and horse shows.  The study further represents that the Earl Warren Showgrounds are owned by the State of California.  True and correct copies of pages from this study are attached hereto as **Exhibit B**.

I declare under penalty of perjury that the foregoing is true and correct and was executed on March 1, 2024, in Santa Barbara, California.


        /s/ Delaney R. Satz
                Delaney R. Satz

# EXHIBIT A

Looking for information on Santa Barbara's Best RV Park? Click Here

×

Events     Public Information     Venue & Rentals     Contact



About Earl Warren Showgrounds

A 34-acre multi-use property located in the City of Santa Barbara

**Earl Warren Showgrounds is Santa Barbara's multi-use community event center**

**Our Mission**

**Our Values**

**Our Shared Beliefs**

**Who We Serve**

The Earl Warren Showgrounds is a multi-use community event and emergency resiliency center serving the existing and changing needs of Santa Barbara's culture, history, and community.

Service ✴ Flexibility ✴ Accessible
Affordable ✴ Trust ✴ Inclusive ✴ Stewardship

✴ Providing space for shared experiences.

✴ Serving as a hub for gatherings.

✴ Agile, accessible, affordable.

✴ Serving the needs of our community.

✴ Serving the changing needs of our community.

✴ Serving as a trustee of public trust and of a public asset.

✴ Inclusivity, place where all can belong.

✴ Environmental and agriculture stewardship.

**The Showgrounds exists:**

- To serve as stewards of a public resource and asset and make the resources and asset available to the community.

- To provide locally relevant activity and event space that is multi- purpose and diverse in its offerings.

- To celebrate community talent, diversity, spirit and provide the ties that bind the community together.

- To promote, educate, and connect the community to agriculture.

**The Earl Warren Showgrounds serves the entire community, particularly the communities within the parameters of the 19th DAA District. (Defined as Carpinteria to Gaviota).**

## Our Beginnings

Earl Warren Showgrounds was originally developed as the permanent location for the Santa Barbara National Horse and Flower show as well to attract and support other equestrian and agricultural events to the Santa Barbara area. In 1950, a site at the corner of Las Positas Road and Calle Real was selected for the showground. To gain support for construction of the facilities from the City of Santa Barbara and the local community, the District gave eighty-two acres to the City to add to the community golf course and ten acres for the construction of Adams Elementary School.

In 1955,  the 19th Agricultural District received State authorization to plan and build the fairgrounds. The Equestrian Facility was completed in 1958, with the Exhibit building finished 1959 and the administration building was added in 1961. The Satellite wagering building was completed in 1993.

## Our History

Earl Warren Showgrounds has served many needs of the Santa Barbara community over the years. The home to many events and historic moments and performances, we continue to evolve with the times and our community needs.  Stay tuned for more content.

## Our Future

Earl Warren Showgrounds has a vital role in the Santa Barbara community and is committed to...

Stay tuned for more content.

### Explore Over 40 years of Event Posters!


































Case 2:23-cv-06828-TJH-MAA    Document 26-3    Filed 03/01/24    Page 6 of 7    Page ID #:118




## We are Showgrounds Strong.



Earl Warren Showgrounds provides essential emergency services during disasters. We are a financially self supporting entity. Your support ensures our community's safety. Please join us!

DONATE TODAY

**Earl Warren Showgrounds**

We are a multi-use community event and emergency resiliency center serving the existing and changing needs of Santa Barbara's culture, history, and community.



**BOOK YOUR EVENT!**

Copyright © 2024 Earl Warren Showgrounds | All Rights Reserved | Site by Oniracom

State of California | 19th District Agricultural Association

# EXHIBIT B

City of Santa Barbara Police Station Project - Comparative Evaluation of Five Alternatives – August 2019

## Summary of Preliminary Environmental Review

### EARL WARREN SHOWGROUNDS SITE ALTERNATIVE

**Project:** Remove existing development; discontinue uses. Redevelop with 72,000 SF police station, 131,255 SF parking structure (252 station/ employee spaces), 80 surface public spaces. Construction process up to 28 months; 12,000 cy grading.

**Earl Warren Showgrounds Site** (portion): <u>Location</u>: 3400 Calle Real; APN 051-230-017; west of intersection of Las Positas Rd/Calle Real. <u>Size:</u> 4.16 acres. <u>Ownership:</u> State of CA. <u>Existing Land Use:</u> Auditorium, Stadium, Equestrian, Convention Ctr.

| ENVIRONMENTAL IMPACT | | IMPACT SIGNIFICANCE LEVEL |
|---|---|---|
| **AIR QUALITY** | **Criteria Air Pollutants** (ozone precursors, particulates - mobile, stationary sources) | **Less than Significant Impact** Measures to minimize effects identified with design. |
| | **Highway Exhaust** (proximity to Highway 101) | **Less than Significant Impact** Measures to minimize effects identified with design. |
| | **Greenhouse Gas** ($CO_2e$ – mobile, stationary sources) | **Less the Significant Impact** Project design and CEQA review to refine measures Incorporated in project to reduce effects. |
| **BIOLOGICAL RESOURCES** | **Mature Trees Lost** (26 trees) | **Potentially Significant Impact** Likely mitigable. Mitigation level determined with project design and CEQA review. |
| **ENERGY RESOURCES** | **Energy Consumption** (mobile, stationary sources) | **Less than Significant Impact** Project design and CEQA review to refine impact reduction measures to be incorporated. |
| **GEOPHYSICAL CONDITIONS** | **Seismic, Geologic, Soil Conditions** (liquefaction, high groundwater, soil types) | **Less than Significant Impacts** With standard engineering, regulatory measures. |
| **HAZARDS** | **Soil Contamination, Hazardous Materials Risk of Upset, Fire Hazard** | **Less than Significant Impact** With standard regulatory provisions. |
| **HERITAGE RESOURCES** | **Archaeological Resources** (sensitivity zone for subsurface resources from historic eras) | **Potentially Significant Impact** Likely mitigable with standard measures to be determined with CEQA review. |
| | **Historic Resources** | **Less than Significant Impact** |
| | **Tribal Cultural Resources** | **Less than Significant Impact** |
| **HYDROLOGY, WATER QUALITY** | **Flood Hazard** (flood zone X minimal risk) | **Less than Significant Impact** |
| | **Drainage/Water Quality** (Tier 3 SWMP; Construction BMPs) | **Less than Significant Impacts** With standard measures determined with design. |
| **LAND USE** | **Policy Consistency** (County plans, zoning) | **Potentially Significant Impact** |
| | **No Growth-Inducing Effect** | **Less than Significant Impact** |
| **NOISE** | **Long-Term Operations Noise** | **Less than Significant Impact** |
| | **Temporary Construction Noise** (sensitive receptors not in close proximity) | **Less than Significant Impact** Standard measures would minimize effect. |
| **OPEN SPACE, VISUAL** | **Open Space/Visual Resources, Scenic Views, Visual Compatibility, Lighting** | **Less than Significant Impacts** With Design Review approval. |
| **PUBLIC FACILITIES & SERVICES** | **Fire, Police, Schools, Parks Services** (Loss of recreation area) (Fire, Police, Schools services demand) | **Potentially Significant Park Impact** Identify impact as part of CEQA environmental review **Less than Significant Impact** Fire/Police/Schools |
| **PUBLIC UTILITIES** | **Water, Wastewater, Solid Waste Demand** | **Less than Significant impacts** |
| **TRANSPORTATION** | **Long-term Operations - Traffic Congestion** (peak-hour intersection traffic) | **Potentially Significant Impact** Impact to be determined with CEQA review. |
| | **Circulation, Emergency Access, Alternate Modes** (pedestrian, bicycle, bus, rail) | **Less than Significant Impacts** |
| | **Temporary Construction Traffic** | **Less than Significant Impact** With standard measures applied. |

*Note: This is a preliminary environmental evaluation to help inform the public and City Council's initial choice of a preferred site alternative to undergo project design and the official CEQA environmental review process prior to City decisions on site selection and project approval.*

(64 of 123), Page 64 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 64 of 123
Case 2:23-cv-06828-TJH-MAA Document 26-4 Filed 03/01/24 Page 3 of 3 Page ID
#:122

*Santa Barbara Police Station Project*
**Earl Warren Showgrounds Site Alternative**
**PRELIMINARY ENVIRONMENTAL REVIEW**

August 2019

**Site Alternative**

This site alternative would entail a 4.16-acre portion of the Earl Warren Showgrounds (Assessor's Parcel Number 051-230-017) located at 3400 Calle Real, a 33.9 acre property located at the corner of Las Positas Road and Calle Real. The property is owned by the State of California, and is within unincorporated Santa Barbara County jurisdiction. The property is bordered to the west and north by the Santa Barbara Community Golf Course and Adams Elementary School, to the east by Las Positas Street, and to the south by Highway 101, with residences along Calle Real and Los Positas Road.

Earl Warren Showgrounds is a multi-use community event center including an auditorium, stadium, equestrian facility, and convention center. It is used during weekdays, evenings, and weekends, including for the Santa Barbara Fair & Expo, Santa Barbara National Horse Show, the Haunt at the Showgrounds and many other events, conferences, concerts, and activities. The showgrounds has the largest parking lot and indoor facilities in the County. It also functions as a local community support center providing emergency management staging and evacuation sites for people and animals.

A 4.16-acre (181,209.6 square feet) portion of the site is currently available for a long-term ground lease from the State of California. This portion of the site is located at the western end of the parcel and is currently occupied by a horse arena, hockey arena, three cell towers, various temporary structures, and a parking lot. The site is paved, with ornamental trees and landscaping across the site.

**Project Description**

The project would include removal of all existing structures, including the horse arena, hockey arena, and various temporary structures, and either removal or relocation of the cell towers.

The existing Santa Barbara City Police operations are located at four separate sites (215 Figueroa Street police station, 222 East Anapamu Street police station annex, 1200 Anacapa Street dispatch, and 415 Sola Street animal control) and would be consolidated at the new project site.

The project would consist of a new up to 72,000 square foot Police Station building, a new 131,255 square foot secure parking structure to accommodate 252 parking spaces (128 for Police Department vehicles and 124 for employee vehicles), up to 80 public non-secured surface parking spaces, and up to 42 bicycle parking spaces. Both the Police Station building and the parking structure would include up to three aboveground stories, with an overall maximum height of approximately 60 feet.

The Police operations would remain the same as presently exist at the current locations and would include the Investigative/Internal Operations Division, Field Operations Division, Community Support Services Division, and Common Areas (public lobby, multi-purpose meeting rooms, staff break rooms, fitness room, and locker rooms). The public lobby area would be separated from the secure staff areas.

The site preparation and construction process is estimated to take 28 months, including three months for the earthwork phase and 25 months for the construction phase.

Joel S. Farkas, Esq. (S.B. # 244032)
5404 Whitsett Avenue #46
Valley Village, California 91607
Tel: (310) 621-6654
Fax: (818) 495-2513

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE BOYER, an individual; DAVID WAYNE GRIGGS, an individual; KIMBERLY COLLEEN GRIGGS, an individual; and JONATHAN BOYER, an individual,<br><br>vs.<br><br>CITY OF SANTA BARBARA; SANTA BARBARA POLICE DEPARTMENT; JOHNS HOPKINS CENTER FOR GUN VIOLENCE SOLUTIONS, successor in interest of The Coalition Against Gun Violence; and DOES 1 to 101,<br><br>Defendants. | Case No.<br><br>FIRST AMENDED COMPLAINT FOR:<br><br>1. VIOLATION OF 42 U.S.C. § 1983<br><br>[DEMAND FOR JURY TRIAL] |

(66 of 123), Page 66 of 123   Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 66 of 123
Case 2:23-cv-06828-TJH-MAA   Document 24   Filed 02/16/24   Page 2 of 11   Page ID
#:83

Plaintiffs Bruce Boyer, David Wayne Griggs, Kimberly Colleen Griggs, and Jonathan Boyer allege as follows:

**Jurisdiction and Venue**

1.   All of the relevant events and circumstances occurred in the County of Ventura, and the United States District Court for the Central District of California is Court has jurisdiction over this action pursuant to 28 U.S.C. § 1343.

**Parties**

2.   Plaintiff Bruce Boyer ("Bruce") is now and, at all times relevant herein, was a resident of the State of California, County of Ventura.

3.   Plaintiff David Wayne Griggs ("David") is now and, at all times relevant herein, was a resident of the State of California, County of Ventura.

4.   Plaintiff Kimberly Colleen Griggs ("Kimberly") is now and, at all times relevant herein, was a resident of the State of California, County of Ventura.

5.   Plaintiff Jonathan Boyer ("Jonathan") is now and, at all times relevant herein, was a resident of the State of California, County of Los Angeles.

FIRST AMENDED COMPLAINT

**2**

6.  Plaintiff is informed and believes and, based thereon, alleges that Defendant City of Santa Barbara ("Santa Barbara") is and, at all relevant times, was a municipality chartered and existing under the laws of the State of California.

7.  Plaintiff is informed and believes and, based thereon, alleges that Defendant Santa Barbara Police Department ("SBPD") is an agency, department or subdivision of Defendant Santa Barbara.

8.  Plaintiff is informed and believes and, based thereon, alleges the entity involved in the events described in this Complaint is The Coalition Against Gun Violence.  Plaintiff is further informed and believes and, based thereon, alleges that CAGV was merged into, and succeeded by, Defendant Johns Hopkins Center for Gun Violence Solutions, located at 615 North Wolfe Street, Baltimore Maryland 21205.  Hereinafter, these entities shall be collectively referred to as the "CAGV".

**Doe Defendants**

9.  Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES and therefore sues these Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes and, based thereon,

(68 of 123), Page 68 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 68 of 123
Case 2:23-cv-06828-TJH-MAA   Document 24   Filed 02/16/24   Page 4 of 11   Page ID
#:85

alleges that each of the fictitiously named Defendants is negligently, contractually, or otherwise responsible, directly or indirectly, in whole or in part, for the occurrences alleged in this complaint, and Plaintiff's injuries, as alleged herein, were proximately caused by the actions of such DOE Defendants.

10.   Plaintiff is informed and believes and, based thereon, alleges that, at all times relevant herein, each of the Defendants identified herein, including, but not limited to, those named as DOES, were acting as agents, principals, representatives, proxies, guardians, surrogate, alter egos, or otherwise, on behalf of the other Defendants, collectively or individually, and thus, each such identified Defendants, including, but not limited to those names as DOES, are individually or collectively, directly or indirectly, in whole or in part, or vicariously or otherwise liable for the acts or omissions of the other Defendants, individually or collectively.

**Relevant Facts**

11.   Plaintiffs are informed and believe and, based thereon, allege that Defendant CAGV is, and was, an organization whose purpose is to foster the restriction of gun ownership, and advocate for the total ban of certain types of firearms.

(69 of 123), Page 69 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 69 of 123
Case 2:23-cv-06828-TJH-MAA    Document 24    Filed 02/16/24    Page 5 of 11    Page ID
#:86

12.    On August 21, 2021, Defendants Santa Barbara, SBPD and CAGV collectively conducted a so-called "gun buyback" event ("Buyback") at the Earl Warren Showgrounds in Santa Barbara, California.

13.    For weeks prior to the Buyback, Defendants Santa Barbara, SBPD and CAGV advertised the Buyback through flyers, newspaper advertisements, electronic media, and other forms of mass communication.  The advertisements noted that the Buyback was being conducted by Defendants Santa Barbara, SBPD and CAGV. Moreover, by jointly participating with Defendant CAGV in the Buy Back, and by jointly advertising the Buy Back, Defendants Santa Barbara and SBPD adopted and promoted the political purposes and goals of Defendant CAGV.

14.    The advertisements identified the event as a "gun buyback."  The advertisement did not restrict the event to the purchase of any single type of "gun."

15.    Plaintiffs Bruce, David, Kimberly, and Jonathan are firearm rights activists, and they are members of an organization known as the "Sons of Liberty LA" ("SOLLA").  Plaintiffs Bruce, David, Kimberly, and Jonathan, as well as other SOLLA members, believe that the right to bear arms is enshrined in the

FIRST AMENDED COMPLAINT
**5**

Second Amendment of the United States Constitution.  Plaintiffs Bruce, David, Kimberly, and Jonathan, as well as other SOLLA members, further believe that the Buyback was unconstitutional as it was conducted by a private political group – i.e., CAGV – with the imprimatur of a public municipality and its agency – i.e., Santa Barbara and SBPD.

16. Accordingly, on August 21, 2021, Plaintiffs Bruce, David, Kimberly, and Jonathan attempted to participate in the Buyback in a way which did not interfere with the Buyback, but still expressed their opposition to it.

17. Specifically, the Buy Back involved a surrender of "guns" by members of the public in exchange for gift cards.   Persons wishing to surrender a "gun" had to form a line with their vehicles from a public street to the actual place of the exchange, and they had to place their "guns" in the trunk or rear of their vehicles.  When a vehicle arrived at the exchange area, persons in the passenger compartment were instructed to remain in the vehicle, and the driver was told to open the vehicle's trunk.  An individual, believed to be a SBPD officer removed the "guns" and took them to an inspection area.  The SBPD officer then returned to the vehicle and handed the driver a $100 gift cart for each "gun" or piece of a "gun" surrendered.

FIRST AMENDED COMPLAINT

**6**

(71 of 123), Page 71 of 123  Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 71 of 123
Case 2:23-cv-06828-TJH-MAA  Document 24  Filed 02/16/24  Page 7 of 11  Page ID
#:88

18. Plaintiffs Bruce, David, Kimberly, and Jonathan appeared at the Buyback with toy "guns" in the trunks of their vehicle as a means of protesting the event while still attempting to participate in it. Plaintiffs Bruce, David, Kimberly, and Jonathan believed that the items satisfied the definition of "guns," as advertised, since the advertisements did not specify any type of "gun."

19. Plaintiffs Bruce, David, Kimberly, and Jonathan fully complied with the instructions and procedures imposed by Defendants CAGV and for exchanging the "guns," including placing the items in the trunks of their vehicles, remaining in their vehicles, and waiting in a vehicle line to exchange their "guns."

20. Plaintiff Boyer had several toy "guns" within a box in the trunk of his automobile. When he arrived at the exchange location, he informed the officer that the items were in a box in the trunk of his automobile. Boyer opened his car's trunk, and the officer removed the box.

21. The officer returned to Boyer's vehicle and told him that the items in the box were toys, and that he would not be given a gift card for the items. Boyer respectfully asked to talk to the person in charge. Boyer was allowed to park his vehicle away from the exchange line to avoid blocking other vehicles. He

was then taken to speak to a woman – whose name he does not presently

recall – who was a representative of CAGV, and not a SBPD officer.  A SBPD

officer was also present while Boyer spoke to the CAGV representative.

22.    Boyer told this person that he and Plaintiffs David, Kimberly, and Jonathan

were protesting the Buyback, including the participation of a private,

politically oriented organization, such as CAGV, in what was ostensibly a

publicly sponsored and funded event.  Boyer further stated that he submitted

"guns" as called for in the advertisements, and he was entitled to a gift card

for each gun.

23.    While conversing with the CAGV representative, another SBPD officer

approached the group and stated that there were other persons – including

Plaintiffs David, Kimberly, and Jonathan – in the vehicle exchange line,

insisting that they be given gift cards in exchange for toy "guns."

24.    At this point, the SBPD officer who accompanied the CAGV representative

told Boyer that if he and Plaintiffs David, Kimberly, and Jonathan did not

immediately leave the Buyback location, they would be arrested.  Boyer

responded that he had a right to protest the Buyback in a manner which did

not impede the event, since he was a member of the public invited to

FIRST AMENDED COMPLAINT

8

(73 of 123), Page 73 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 73 of 123
Case 2:23-cv-06828-TJH-MAA Document 24 Filed 02/16/24 Page 9 of 11 Page ID
#:90

participate in the Buyback.

25. The concerted manner in which Defendants dealt with Plaintiffs and their toy "guns" was indicative of clear policies and guidelines having been established to deal with such situations. Each individual played their part and there was little room for improvisation. Each directive was firmly and bluntly articulated in such a way it appeared to be rehearsed.

26. Plaintiffs had no choice other than to face arrest or leave the event, without the gift cards, even though they believed that the SBPD's threats violated their freedom of speech, assembly, and liberty as guaranteed by the United States Constitution.

27. In sum, Plaintiffs were entitled to be at the event to participate and/or protest, and to receive gift cards in exchange for their "guns." Instead, Plaintiffs were told to leave under threat of arrest, not given gift cards, and defendants CAGV and SBPD kept the toy "guns" presented by Plaintiffs without compensating them for these items.

**First Cause of Action**
**Violation of Federally Protected Rights under 42 U.S.C. § 1983**
(Against All Defendants)

28. Plaintiffs restate paragraphs 1 through 26 as if fully set forth herein and

incorporates same by reference.

29.   Defendants, while acting under the color of state law, sought to deprive Plaintiffs of their rights to free speech and freedom of assembly, in violation of the First Amendment of the United States Constitution, their protection from unreasonable seizures, in violation of the Fourth Amendment of the United States Constitution, and their right to liberty, in violation of the Fourteenth Amendment of the United States Constitution.

30.   Defendants, while acting under the color of state law, deprived Plaintiffs of their right to remain at the event and continue their peaceful protest.

31.   Defendants, while acting under the color of state law, wrongfully seized Plaintiffs' personal property – their toy "guns."

32.   As a direct and proximate cause of Defendant's actions, Plaintiffs have suffered embarrassment, humiliation, and emotional distress.

33.   Plaintiffs have also suffered damages in excess of the minimum established for this Court, in an amount to be determined at time of trial.

WHEREFORE, Plaintiff requests that the Court:

1.   Award Plaintiffs damages, in an amount to be proven at time of trial;

FIRST AMENDED COMPLAINT
10

2.    Award Plaintiffs their cost of suit and attorney fees, pursuant to 42 U.S.C. § 1988.

3.    Award Plaintiffs such other and further relief as the Court deems just and proper.

Dated: February 15, 2024   by: _____

                        Joel S. Farkas
                        Attorney for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of their claims in this action.

Dated: February 15, 2024     by: _____

                        Joel S. Farkas
                        Attorney for Plaintiffs

FIRST AMENDED COMPLAINT

**11**

(76 of 123), Page 76 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 76 of 123
Case 2:23-cv-06828-TJH-MAA   Document 20   Filed 01/22/24   Page 1 of 2   Page ID
#:43

SARAH J. KNECHT, City Attorney (SBN 138275)
Tom R. Shapiro, Assistant City Attorney (SBN 127383)
Delaney R. Satz, Deputy City Attorney (SBN 335899)
740 State Street, Suite 201
Post Office Box 1990
Santa Barbara, California  93102-1990
Telephone:  (805) 564-5326
Fax:  (805) 564-5426
Email:  tshapiro@santabarbaraca.gov
            dsatz@santabarbaraca.gov

Attorneys for Defendants City of Santa Barbara
and Santa Barbara Police Department

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE BOYER, an individual; DAVID WAYNE GRIGGS, an individual; KIMBERLY COLLEEN GRIGGS, an individual; and JONATHAN BOYER, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF SANTA BARBARA; SANTA BARBARA POLICE DEPARTMENT; JOHNS HOPKINS CENTER FOR GUN VIOLENCE SOLUTIONS, successor in interest of The Coalition Against Gun Violence; and DOES 1 to 101,<br><br>Defendants. | CASE NO. 2:23-cv-06828-TJH-MAA<br><br>**DEFENDANTS CITY OF SANTA BARBARA AND SANTA BARBARA POLICE DEPARTMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>(FRCP 12(b)(6))<br><br>Date:  February 26, 2024<br>Time:  Under Submission<br>Place:  Courtroom 9C, 9th Floor<br>            350 W. 1st Street, Los Angeles<br>Judge:  Hon. Terry J. Hatter, Jr.<br><br>Complaint Filed:  8/18/23 |

TO PLAINTIFFS AND THEIR ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that on February 26, 2024, or as soon thereafter as

the matter may be heard in Courtroom 9C, located at 350 W. 1st Street, 9th Floor,

Los Angeles, CA, 90012, Defendants City of Santa Barbara and Santa Barbara

Police Department (the "City" or "Defendants") will move the Court to dismiss

Plaintiff's Complaint in its entirety based on failure to state a claim against the City pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Motion is made following the conference of counsel pursuant to Central District Local Rule 7-3, which took place on January 11, 2024. See attached Declaration of Delaney R. Satz.

The Motion will be based on this Notice of Motion, the Memorandum of Points and Authorities filed concurrently herewith, the City's Request for Judicial Notice, all pleadings, files and records in this proceeding, and any argument or evidence that may be presented to the Court at the time of the hearing.


DATED: January 22, 2024        Sarah J. Knecht, City Attorney


By _____/s/ Delaney R. Satz_____
Delaney R. Satz
Deputy City Attorney
Attorneys for City of Santa Barbara

(78 of 123), Page 78 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 78 of 123
Case 2:23-cv-06828-TJH-MAA    Document 20-1    Filed 01/22/24    Page 1 of 12    Page
ID #:45

SARAH J. KNECHT, City Attorney (SBN 138275)
Tom R. Shapiro, Assistant City Attorney (SBN 127383)
Delaney R. Satz, Deputy City Attorney (SBN 335899)
740 State Street, Suite 201
Post Office Box 1990
Santa Barbara, California  93102-1990
Telephone:  (805) 564-5326
Fax:  (805) 564-5426
Email:  tshapiro@santabarbaraca.gov
         dsatz@santabarbaraca.gov

Attorneys for Defendant, City of Santa Barbara
and Santa Barbara Police Department

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE BOYER, an individual; DAVID WAYNE GRIGGS, an individual; KIMBERLY COLLEEN GRIGGS, an individual; and JONATHAN BOYER, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF SANTA BARBARA; SANTA BARBARA POLICE DEPARTMENT; JOHNS HOPKINS CENTER FOR GUN VIOLENCE SOLUTIONS, successor in interest of The Coalition Against Gun Violence; and DOES 1 to 101, <br><br> Defendants. | CASE NO. 2:23-cv-06828-TJH-MAA <br><br> **DEFENDANTS CITY OF SANTA BARBARA AND SANTA BARBARA POLICE DEPARTMENT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT** <br><br> (FRCP 12(b)(6)) <br><br> Date:  February 26, 2024 <br> Time: Under Submission <br> Place: Courtroom 9C, 9th Floor <br>         350 W. 1st Street, Los Angeles <br> Judge: Hon. Terry J. Hatter, Jr. <br><br> Complaint Filed:  8/18/23 |

Defendants City of Santa Barbara and Santa Barbara Police Department submit the following Memorandum of Points and Authorities in support of their Motion to Dismiss Plaintiffs' Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).

(79 of 123), Page 79 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 79 of 123
Case 2:23-cv-06828-TJH-MAA    Document 20-1    Filed 01/22/24    Page 2 of 12    Page
ID #:46

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

In this matter, Plaintiffs Bruce Boyer, David Wayne Griggs, Kimberly Colleen Griggs, and Jonathan Boyer (collectively "Boyers/Griggs" or "Plaintiffs") allege that their First Amendment rights were violated at a gun buyback event at the Earl Warren Showgrounds in Santa Barbara, California, when the Defendants refused to give $100 gift cards to Boyers/Griggs in exchange for toy guns and requested that they leave the event.  The Complaint fails to allege how these circumstances involved the restriction of Boyers/Griggs' speech and, even if there was a restriction of speech, how such restriction was "more extensive than is necessary to serve" the important government interest of keeping firearms off the street, preventing suicides, homicides, and other crimes.  *See Nordyke v. Santa Clara County*, 110 F.3d 707, 713 (9th Cir. 1997).  Further, the Earl Warren Showgrounds is not a traditional or designated forum for free speech and, consequently, the showgrounds are not traditionally open to expressive activity.  *See Camenzind v. California Exposition and State Fair*, 84 F.4th 1102, 1109 (9th Cir. 2023).  Additionally, the Santa Barbara Police Department is not a suable entity and cannot be sued in this context.

### II.    STATEMENT OF FACTS

As this is a 12(b)(6) Motion to Dismiss the Complaint, the following facts are taken from the Complaint and are properly subject to judicial notice.

On August 21, 2021, the City of Santa Barbara and the Santa Barbara Police Department (collectively the "City" or "Defendants") and The Coalition Against Gun Violence ("CAGV") held a gun buyback event at the Earl Warren Showgrounds in Santa Barbara, California.  (Complaint [Dkt. 1], ¶ 12.)  The advertisements for the event described the event as a "gun buyback" without specifying the types of guns.  (*Id.* at 13.)  People participated in the event by placing their guns in the trunks of their vehicles, forming a line with their vehicles,

(80 of 123), Page 80 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 80 of 123
Case 2:23-cv-06828-TJH-MAA   Document 20-1   Filed 01/22/24   Page 3 of 12   Page
ID #:47

and, when arriving at the exchange area, the drivers would open the trunks of their vehicles. (*Id.* at 17.) Then an individual, believed to be a police officer, would remove the guns from the trunks and take them to an inspection area. (*Id.*) After inspection, the police officer would return to the vehicle and give the driver a $100 gift card for each gun or piece of gun surrendered. (*Id.*)

Plaintiffs Bruce Boyer, David Wayne Griggs, Kimberly Colleen Griggs, and Jonathan Boyer are members of an organization known as the "Sons of Liberty LA (SOLLA)". (Complaint, ¶ 15.) On August 21, 2021, Plaintiffs attended the buyback event. (*Id.* at 16.) Bruce Boyer had several toy guns within a box in the trunk of his automobile. (*Id.* at 20.) The police officer, after inspecting the toy guns, returned to Boyer's vehicle and told him that he would not be given gift cards for the toy guns. (*Id.* at 21.) The other Plaintiffs, David Griggs, Kimberly Griggs, and Jonathan Boyer were also in the gun exchange line and insisted that they were entitled to the gift cards in exchange for toy guns. (*Id.* at 23.) Boyers/Griggs were informed that if they did not leave the event, they would be arrested. (*Id.* at 24.) They left the event, without their toy guns. (*Id.* at 25-26.)

**Earl Warren Showgrounds.** The following are facts judicially noticeable, and a separate Request for Judicial Notice ("RJN") is filed concurrently herewith. As stated on its website, the Earl Warren Showgrounds is a multi-use community event center which provides facilities for community events, meetings, and emergency response, including ticketed events such as fairs, expositions, and horse shows. (Satz Decl., ¶ 6, Ex. B.) The Earl Warren Showgrounds are owned by the State of California. (Satz Decl., ¶ 7, Ex. C.)

## III. ARGUMENT

### A. The Complaint Should Be Dismissed for Failure to State a Claim.

A complaint may be dismissed for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). On a motion to dismiss under Rule 12(b)(6), a court must accept as true all factual allegations pleaded in the complaint

(81 of 123), Page 81 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 81 of 123
Case 2:23-cv-06828-TJH-MAA   Document 20-1   Filed 01/22/24   Page 4 of 12   Page
ID #:48

and must construe them "in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996); *see also Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116, 1120–21 (9th Cir. 2007). Dismissal under Rule 12(b)(6) may be based on either "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Group v. Delta Dental Plan of Calif., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Supreme Court has interpreted this rule to require that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Although a complaint generally need not contain detailed factual allegations, "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 570 (citations and internal quotation marks omitted). Similarly, a court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions…While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 678-679; *see also Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Plaintiffs bring a single cause of action, alleging that Defendants violated
"their rights to free speech and freedom of assembly, in violation of the First
Amendment of the United States Constitution, and their right to liberty, in violation
of the Fourteenth Amendment of the United States Constitution." (Complaint, ¶
28.) Plaintiffs further allege that the buyback event "was unconstitutional as it was
conducted by a private political group—i.e., CAGV—with the imprimatur of a
public municipality and its agency—i.e., Santa Barbara and SBPD." (*Id.* at 15.)

Assuming Plaintiffs' factual allegations are true, they nevertheless fail to state
a claim for relief that is plausible on its face. It is entirely unclear from the face of
the Complaint what conduct Plaintiffs are alleging was unconstitutional. For
instance, whether Defendants' refusal to exchange the toy guns for gift cards was
the alleged violation, or if Defendants' request that Plaintiffs leave the event was
the alleged violation. Regardless, for reasons explained more fully below, both
arguments fail. As it seems unlikely Plaintiffs could cure a defect such as this by
filing an amended Complaint, the Complaint should be dismissed without leave to
amend.

**B.     The Complaint Fails Under *Monell v. New York City Department
        of Social Services*.**

In order to assert civil rights liability under 42 U.S.C. section 1983 against the
City, Plaintiffs must allege that the City had a policy, custom, or practice leading to
the alleged First Amendment violation. *See Saved Magazine v. Spokane Police
Department*, 19 F.4th 1193, 1201 (9th Cir. 2021); *Monell v. New York City Dept. of
Social Servs.*, 436 U.S. 658, 692 (1978). Nowhere in the Complaint do Plaintiffs
even attempt to allege that the City had a policy, custom, or practice leading to the
alleged First Amendment violation. Even if Plaintiffs were to amend their
Complaint to allege a policy, custom, or practice, this would be insufficient, absent
additional factual allegations, to survive a 12(b)(6). *See Villarreal v. County of
Monterey*, 254 F.Supp.3d 1168, 1195 (N.D. Cal. 2017) (granting motion to dismiss

(83 of 123), Page 83 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 83 of 123
Case 2:23-cv-06828-TJH-MAA   Document 20-1   Filed 01/22/24   Page 6 of 12   Page
ID #:50

pursuant to Federal Rule of Civil Procedure 12(b)(6) because the complaint only mentioned one alleged government policy and therefore failed to sufficiently plead a *Monell* claim).

Furthermore, Plaintiffs have not asserted a claim against any individual officers. However, even if they had, or were to amend their Complaint to assert such an allegation, the officers would be entitled to qualified immunity. "Qualified immunity…shields government officials performing discretionary functions from liability for civil damages[.]". *Saved Magazine*, 19 F.4th at 1198 (quoting *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994)). When determining whether an officer is entitled to qualified immunity, the courts ask, "(1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Id.* Plaintiffs simply allege that the buyback was "unconstitutional as it was conducted by a private political group" and that Defendants' refusal to purchase their fake guns and request they leave the event "violated their freedom of speech, assembly, and liberty[.]". (Complaint, ¶¶ 15, 25.) As explained in more detail below, the sale and/or exchange of guns does not constitute speech within the meaning of the First Amendment. Plaintiffs have failed to show there was a violation of a constitutional right and their Complaint should be dismissed for failure to state a claim.

### C. The Complaint Does Not Allege Speech Within the Meaning of the First Amendment.

As alleged in the Complaint, this case involves the attempted exchange of toy guns for gift cards. Although there appears to be no authority directly on point with respect to fake or as in this case, toy guns, cases evaluating the sale and/or exchange of real guns are analogous. In *B&L Productions, Inc. v. Newsom*, the plaintiffs operated gun shows around California, including on State-owned fairgrounds. *B&L Productions, Inc. v. Newsom*, 661 F.Supp.3d 999, 1002–03 (S.D. Cal. 2023). Plaintiffs sued for various causes of action, including an alleged First

Amendment violation after the State introduced a bill that would prohibit the sale of firearms and ammunition at the State-owned fairgrounds. *Id.* at 1005. Defendants moved to dismiss plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id.* The court granted defendants' motion to dismiss plaintiffs' First Amendment cause of action, *without leave to amend*, reasoning that the mere "act of exchanging money for a gun is not 'speech' within the meaning of the First Amendment[.]" *Id.* (quoting *Nordyke*, 110 F.3d at 710). Contrary to Plaintiffs' contentions, the sale and/or exchange of firearms, as well as the refusal to engage in the sale and/or exchange of firearms, is not considered speech under the First Amendment. As the court did in *B&L Productions, Inc.*, this Court should grant Defendants' Motion and dismiss Plaintiffs' Complaint without leave to amend.

### D. Even If the Exchange of Toy Guns Was Speech, There Was a Substantial Government Interest in Not Accepting the Toy Guns and Asking Plaintiffs to Leave the Event.

Plaintiffs may attempt to argue that the exchange of guns for money constitutes commercial speech. However, this argument similarly fails. *See B&L Productions, Inc.*, 661 F.Supp.3d at 1005. Even if the exchange of guns for money was considered commercial speech, Defendants had a substantial government interest in promoting public safety.

In commercial speech cases, the Ninth Circuit has developed a four-part analysis:

> For commercial speech to come within [the First Amendment], it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

(85 of 123), Page 85 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 85 of 123
Case 2:23-cv-06828-TJH-MAA Document 20-1 Filed 01/22/24 Page 8 of 12 Page
ID #:52

*Nordyke*, 110 F.3d at 711 (citing *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 447 U.S. 557, 566 (1980)).

Assuming that appearing at the gun buyback event with toy guns was not unlawful or misleading, which is debatable, the Court must next consider whether Defendants hosting the gun buyback event, refusing to exchange the toy guns, and asking Plaintiffs to leave the event was made to further a substantial governmental interest. It seems without question that it was.

The purpose of the buyback was to reduce the number of firearms owned by individuals who were voluntarily surrendering them, thus furthering public safety and lowering the risk of suicide, homicide, and other crimes. The courts have continuously held that the government has a "substantial interest in protecting the people from those who acquire guns illegally and use them to commit crimes resulting in injury or death of their victims." *Nordyke*, 110 F.3d at 713. The government interest in preventing suicide, homicide, and other crimes is "unquestionably important." *See Washington v. Glucksberg*, 521 U.S. 702, 730–35 (1997) (recognizing the government's "unquestionably important" interest in preventing suicide); *Schall v. Martin*, 467 U.S. 253, 264 (1984) ("The legitimate and compelling state interest in protecting the community from crime cannot be doubted." (internal quotation marks omitted)); *United States v. Torres*, 911 F.3d 1253, 1263 (holding that the government's interests in crime control and public safety are "important"). Defendants hosting the gun buyback event was in furtherance of arguably one of the most substantial government interests: promoting public safety.

Furthermore, Defendants' refusal to exchange the toy guns and request that Plaintiffs leave the event directly advanced the government's substantial interest in promoting public safety and was not more extensive than necessary to serve that interest, to wit, exchanging real guns for gift cards.

(86 of 123), Page 86 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 86 of 123
Case 2:23-cv-06828-TJH-MAA   Document 20-1   Filed 01/22/24   Page 9 of 12   Page
ID #:53

E.     **The Earl Warren Showgrounds Are Not a Traditional or a
        Designated Public Forum for Free Speech.**

As Plaintiffs have failed to state a claim showing their First Amendment rights
were in fact violated, a forum analysis is not necessary.  Forum analysis is only
necessary if the Court determines that the circumstances in this case involved a
restriction of free speech under the First Amendment.  *Cornelius v. NAACP Legal
Defense and Educational Fund, Inc.*, 473 U.S. 788, 800 (1985) ("[T]he [Supreme]
Court has adopted a forum analysis as a means of determining when the
Government's interest in limiting the use of its property to its intended purpose
outweighs the interest of those wishing to use the property for other purposes.")
Even if Plaintiffs had sufficiently pled a cause of action under the First
Amendment, which they have not, their arguments would nevertheless fail because
the Earl Warren Showgrounds are a nonpublic forum and any alleged restriction on
the exercise of free speech was reasonable and not imposed in an effort to chill
speech based on its content.

When determining what type of forum a property is, the Supreme Court has
looked to factors such as whether the forum has been traditionally made available
for speech, the primary purpose of the forum, and the extent to which speech is
compatible with the forum's usual functioning.  *United States v. Kokinda*, 497 U.S.
720, 727 (1990).  Traditional public forums are limited to public property that has
"a principal purpose… [of] the free exchange of ideas."  *International Society for
Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679 (1992) (internal citations
and quotation marks omitted).  Designated public forums consist of property that
the government "has opened for expressive activity by part or all of the public[.]"
*Id*. at 678.  Restrictions in traditional and designated public forums "survive only if
they are narrowly drawn to achieve a compelling state interest."  *Id.*  All other
types of property are, in the Court's view, nonpublic forums and government-
imposed restrictions of speech in these nonpublic forums will be upheld so long as

(87 of 123), Page 87 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 87 of 123
Case 2:23-cv-06828-TJH-MAA Document 20-1 Filed 01/22/24 Page 10 of 12 Page
ID #:54

they are reasonable and not made in an "effort to suppress the speaker's activity due to a disagreement with the speaker's view." *Id*. at 679.

In *Camenzind v. California Exposition and State Fair*, 84 F.4th 1102, 1109 (9th Cir. 2023), the Ninth Circuit ruled that the enclosed portion of the fairgrounds in question were not considered a traditional public forum for First Amendment purposes, due to factors such as limited free public access, boundaries clearly marked by fencing, and limited hours of operation. *Camenzind*, 84 F.4th at 1109. Similarly, here, the Earl Warren Showgrounds have limited public access and hours of operation, including for events such as fairs, expositions, and horse shows. (Satz Decl., ¶¶ 6–7, Ex. B & C.) With respect to the gun buyback event, participants were given clear instructions to get in line, open their vehicle trunks, and wait for police to inspect the contents. (Complaint, ¶ 17.) Forums such as this do not constitute traditional or designated public forums, and restrictions on speech will be upheld so long as they are reasonable and content-neutral. *International Society for Krishna Consciousness, Inc.*, 505 U.S. at 679.

Defendants refusing to exchange the toy guns and requesting that Plaintiffs leave the event was reasonable in order to promote efficiency and safety of the event, and did not relate to Plaintiffs' alleged viewpoints surrounding the event. Gun buyback events such as this inherently have the potential to pose safety risks (e.g., defective and/or unstable ammunition, accidental discharges, etc.), and Defendants have an interest in limiting entry to individuals who wanted to participate in the program. Plaintiffs have failed to assert that Defendants discriminated against them based on the content of their "speech".

### F.      The Police Department Is Not a Proper Defendant.

It is also important to note that Santa Barbara Police Department is a department within the City of Santa Barbara and is therefore not an entity that may be sued. *See United States v. Kama*, 394 F.3d 1236, 1239-40 (9th Cir. 2005) (Ferguson J., concurring) ("municipal police departments and bureaus are generally

(88 of 123), Page 88 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 88 of 123
Case 2:23-cv-06828-TJH-MAA Document 20-1 Filed 01/22/24 Page 11 of 12 Page
ID #:55

not considered 'persons' within the meaning of 42 U.S.C. § 1983"); *Nelson v. Cty. of Sacramento*, 926 F.Supp.2d 1159, 1170 (E.D. Cal. 2013).

## IV. CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety without leave to amend.

DATED:  January 22, 2024.                     SARAH J. KNECHT, City Attorney


By  ____/s/ Delaney R. Satz_____
      Delaney R. Satz
      Deputy City Attorney
      Attorneys for City of Santa Barbara
      and Santa Barbara Police Department

(89 of 123), Page 89 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 89 of 123
Case 2:23-cv-06828-TJH-MAA Document 20-1 Filed 01/22/24 Page 12 of 12 Page
ID #:56

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants CITY OF SANTA

BARBARA AND SANTA BARBARA POLICE DEPARTMENT, certifies that

this brief contains 3,031 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated _____.


DATED:  January 22, 2024.          SARAH J. KNECHT, City Attorney


By _____/s/ Delaney R. Satz_____
Delaney R. Satz
Deputy City Attorney
Attorneys for City of Santa Barbara
and Santa Barbara Police Department

(90 of 123), Page 90 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 90 of 123
Case 2:23-cv-06828-TJH-MAA    Document 20-2    Filed 01/22/24    Page 1 of 3    Page ID
#:57

SARAH J. KNECHT, City Attorney (SBN 138275)
Tom R. Shapiro, Assistant City Attorney (SBN 127383)
Delaney R. Satz, Deputy City Attorney (SBN 335899)
740 State Street, Suite 201
Post Office Box 1990
Santa Barbara, California  93102-1990
Telephone:  (805) 564-5326
Fax:  (805) 564-5426
Email:  tshapiro@santabarbaraca.gov
           dsatz@santabarbaraca.gov

Attorneys for Defendants City of Santa Barbara
and Santa Barbara Police Department

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE BOYER, an individual; DAVID WAYNE GRIGGS, an individual; KIMBERLY COLLEEN GRIGGS, an individual; and JONATHAN BOYER, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF SANTA BARBARA; SANTA BARBARA POLICE DEPARTMENT; JOHNS HOPKINS CENTER FOR GUN VIOLENCE SOLUTIONS, successor in interest of The Coalition Against Gun Violence; and DOES 1 to 101,<br><br>Defendants. | CASE NO. 2:23-cv-06828-TJH-MAA<br><br>**DECLARATION OF DELANEY R. SATZ IN SUPPORT OF DEFENDANTS CITY OF SANTA BARBARA AND SANTA BARBARA POLICE DEPARTMENT'S MOTION TO DISMISS**<br><br>Date:  February 26, 2024<br>Time:  Under Submission<br>Place:  Courtroom 9C, 9th Floor<br>            350 W. 1st Street, Los Angeles<br>Judge:  Hon. Terry J. Hatter, Jr.<br><br>Complaint Filed:  8/18/23 |

I, DELANEY R. SATZ, declare:

1.     I am an attorney at law, admitted to practice in the State of California and the Central District of California.  I am a Deputy City Attorney with the City of Santa Barbara and represent the City of Santa Barbara and the Santa Barbara Police Department in this matter.

(91 of 123), Page 91 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 91 of 123
Case 2:23-cv-06828-TJH-MAA   Document 20-2   Filed 01/22/24   Page 2 of 3   Page ID
#:58

2.      The facts herein stated are personally known to me firsthand and, if called as a witness, I could and would competently testify hereto.

3.      On January 11, 2024, at approximately 2:00p.m., I called counsel for Plaintiffs, Joel Farkas, to discuss the City's intention to file a Motion to Dismiss pursuant to FRCP 12(b)(6).

4.      During my phone conversation with Mr. Farkas, I explained that I would be filing a 12(b)(6) Motion to Dismiss on behalf of the City.  I told him that the Motion would be based on Plaintiffs' failure to state a claim showing Plaintiffs may be entitled to relief.  Specifically, for failure assert a claim under *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978), and that the alleged events at issue do not constitute "speech" for purposes of the First Amendment. Mr. Farkas indicated he may be amenable to filing an amended complaint.  Later that day, I emailed Mr. Farkas and stated that if he did not let me know by close of business on January 12 whether he intended on filing an amended complaint or not, the City would proceed with filing its Motion.  Mr. Farkas did not respond to this email.  A true and correct copy of this correspondence is attached hereto as **Exhibit A**.

5.      As a result of our meet and confer, and Mr. Farkas' failure to respond, the parties were unable to come to an agreement, necessitating this Motion to Dismiss.

6.      On January 16, 2024, my office downloaded a screenshot from the Earl Warren Showgrounds' official website, located at https://earlwarren.com. The webpage identifies the Earl Warren Showgrounds as a multi-use community event center which provides facilities for events, meetings, and emergency response efforts, including ticketed events such as fairs, expositions, and horse shows.  A true and correct copy of a screenshot of this webpage is attached hereto as **Exhibit B**.

7.      On January 16, 2024, my office downloaded pages of a study from the City of Santa Barbara's website, located at https://santabarbaraca.gov/sites/default/files/documents/Public%20Works/Engineering/SBPD-Summary%20of%20Preliminary%20Environmental%20Review-Earl%20Warren%20Showgrounds%20Site%20Alternative.pdf.  The study identifies the Earl Warren Showgrounds as a multi-use community event center which provides facilities for events, meetings, and emergency response efforts, including ticketed events such as fairs, expositions, and horse shows.  The study further represents that the Earl Warren Showgrounds are owned by the State of California.  True and correct copies of pages from this study are attached hereto as **Exhibit C**.

I declare under penalty of perjury that the foregoing is true and correct and was executed this 22nd day of January 2024, in Santa Barbara, California.

           /s/ Delaney R. Satz
           Delaney R. Satz

(93 of 123), Page 93 of 123  Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 93 of 123
Case 2:23-cv-06828-TJH-MAA   Document 20-3   Filed 01/22/24   Page 1 of 5   Page ID
#:60

# EXHIBIT A

| | |
|---|---|
| **From:** | Delaney Satz |
| **To:** | Joel Farkas |
| **Cc:** | Tom Shapiro | Gina Garrett | Lisa Clendenen |
| **Subject:** | RE: Boyer v. City of Santa Barbara |
| **Date:** | Thursday, January 11, 2024 4:26:42 PM |

Joel,

Thanks for taking the time to talk with me earlier.  During our call, you suggested you may be amenable to filing an amended complaint, and proposed we stipulate to an additional extension for the City to file a responsive pleading.

Please let me know by close of business tomorrow, January 12, whether you intend on filing an amended complaint.  Should I not hear from you by then, the City will proceed with filing its motion.

Best,
Delaney

**Delaney Satz**
Deputy City Attorney
Santa Barbara City Attorney's Office
(805) 564-5328 | dsatz@SantaBarbaraCA.gov
-
Pronouns: She/Her/Hers

CONFIDENTIALITY NOTICE: This communication and its attachments may contain confidential and/or legally privileged information.  It is solely for the use of the intended recipient(s).  Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws.  If you are not the intended recipient, please contact the sender and destroy all copies of the communication.  (COSB)

**From:** Delaney Satz <DSatz@SantaBarbaraCA.gov>
**Sent:** Wednesday, January 10, 2024 12:29 PM
**To:** Joel Farkas <jayesef@gmail.com>
**Subject:** Re: Boyer v. City of Santa Barbara

Hi Joel,

It's no problem at all.  Does 2pm tomorrow work for you?

Best,
Delaney

**Delaney Satz**
Deputy City Attorney

Santa Barbara City Attorney's Office
(805) 564-5328 | dsatz@SantaBarbaraCA.gov

Pronouns: She/Her/Hers

CONFIDENTIALITY NOTICE: This communication and its attachments may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws. If you are not the intended recipient, please contact the sender and destroy all copies of the communication. (COSB)

---

**From:** Joel Farkas <jayesef@gmail.com>
**Sent:** Wednesday, January 10, 2024 12:05 PM
**To:** Delaney Satz <DSatz@SantaBarbaraCA.gov>
**Subject:** Re: Boyer v. City of Santa Barbara

Hi Delaney,

I apologize for the delay in responding. I'm available essentially anytime tomorrow to speak. If that doesn't work for you, Friday morning is also good. Let me know what time in there works best. Thanks.

Joel

- - -

Joel S. Farkas, Esq.

5404 Whitsett Avenue #46

Valley Village, CA 91607

TEL 310 621 6654

FAX 818 495 2513

jojo@licit.us



On Wed, Jan 10, 2024 at 10:23 AM Delaney Satz <DSatz@santabarbaraca.gov>

wrote:

Counsel,

I am following up with my previous email regarding a time to meet and confer. Please let me know when you are available for a call.

Best,
Delaney


**Delaney Satz**

Deputy City Attorney

Santa Barbara City Attorney's Office
(805) 564-5328 | dsatz@SantaBarbaraCA.gov


-

Pronouns: She/Her/Hers


CONFIDENTIALITY NOTICE: This communication and its attachments may contain confidential and/or legally privileged information.  It is solely for the use of the intended recipient(s).  Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws.  If you are not the intended recipient, please contact the sender and destroy all copies of the communication.  (COSB)

---

**From:** Delaney Satz
**Sent:** Monday, January 8, 2024 10:51 AM
**To:** jayesef@gmail.com <jayesef@gmail.com>
**Cc:** jojo@licit.us <jojo@licit.us>; nina@licitlaw.com <nina@licitlaw.com>; Gina Garrett <ggarrett@SantaBarbaraCA.gov>; Lisa Clendenen <lclendenen@SantaBarbaraCA.gov>; Tom Shapiro <TShapiro@SantaBarbaraCA.gov>
**Subject:** Boyer v. City of Santa Barbara


Counsel,


Pursuant to Local Rule 7-3, January 12 is the deadline to meet and confer prior to filing a responsive motion to your Complaint.  Please let me know your availability this week.


Best,

Delaney

**Delaney Satz**
Deputy City Attorney

Santa Barbara City Attorney's Office
(805) 564-5328 | dsatz@SantaBarbaraCA.gov

Pronouns: She/Her/Hers

CONFIDENTIALITY NOTICE: This communication and its attachments may contain confidential and/or legally privileged information.  It is solely for the use of the intended recipient(s).  Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws.  If you are not the intended recipient, please contact the sender and destroy all copies of the communication.  (COSB)

# EXHIBIT B



## Featured Events



(100 of 123), Page 100 of 123
1/16/24, 9:... Case 2:23-cv-06828-TJH-MAA   Document 2e1-4 Warren Showgrounds/24   Page 3 of 5   Page ID #:67
Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 100 of 123

# Santa Barbara National Horse Show
# July 5-8 & 12-16, 2023

Learn more



We are Showgrounds Strong

Earl Warren Showgrounds receives no tax dollars and therefore depends on event revenue and community donations. We are proud to support our Santa Barbara community.

## Contact Us

## Name (required)

First Name

Last Name

## Email (required)

## Message (required)

Send Email



**Home**                                **receptionist@earlwarren.com**

**Horse Show**                          **Office - (805) 687-0766**

**RV Park**                             **RV Park - (805) 350-4556**

**Contact**

ER_102

# EXHIBIT C

City of Santa Barbara Police Station Project - Comparative Evaluation of Five Alternatives – August 2019

## *Summary of Preliminary Environmental Review*

## EARL WARREN SHOWGROUNDS SITE ALTERNATIVE

**Project:** *Remove existing development; discontinue uses. Redevelop with 72,000 SF police station, 131,255 SF parking structure (252 station/ employee spaces), 80 surface public spaces. Construction process up to 28 months; 12,000 cy grading.*

**Earl Warren Showgrounds Site** *(portion): Location: 3400 Calle Real; APN 051-230-017; west of intersection of Las Positas Rd/Calle Real. Size: 4.16 acres. Ownership: State of CA. Existing Land Use: Auditorium, Stadium, Equestrian, Convention Ctr.*

| ENVIRONMENTAL IMPACT | | IMPACT SIGNIFICANCE LEVEL |
|---|---|---|
| **AIR QUALITY** | **Criteria Air Pollutants** *(ozone precursors, particulates - mobile, stationary sources)* | **Less than Significant Impact** Measures to minimize effects identified with design. |
| | **Highway Exhaust** *(proximity to Highway 101)* | **Less than Significant Impact** Measures to minimize effects identified with design. |
| | **Greenhouse Gas** *($CO_2e$ – mobile, stationary sources)* | **Less the Significant Impact** Project design and CEQA review to refine measures Incorporated in project to reduce effects. |
| **BIOLOGICAL RESOURCES** | **Mature Trees Lost** *(26 trees)* | **Potentially Significant Impact** Likely mitigable. Mitigation level determined with project design and CEQA review. |
| **ENERGY RESOURCES** | **Energy Consumption** *(mobile, stationary sources)* | **Less than Significant Impact** Project design and CEQA review to refine impact reduction measures to be incorporated. |
| **GEOPHYSICAL CONDITIONS** | **Seismic, Geologic, Soil Conditions** *(liquefaction, high groundwater, soil types)* | **Less than Significant Impacts** With standard engineering, regulatory measures. |
| **HAZARDS** | **Soil Contamination, Hazardous Materials Risk of Upset, Fire Hazard** | **Less than Significant Impact** With standard regulatory provisions. |
| **HERITAGE RESOURCES** | **Archaeological Resources** *(sensitivity zone for subsurface resources from historic eras)* | **Potentially Significant Impact** Likely mitigable with standard measures to be determined with CEQA review. |
| | **Historic Resources** | **Less than Significant Impact** |
| | **Tribal Cultural Resources** | **Less than Significant Impact** |
| **HYDROLOGY, WATER QUALITY** | **Flood Hazard** *(flood zone X minimal risk)* | **Less than Significant Impact** |
| | **Drainage/Water Quality** *(Tier 3 SWMP; Construction BMPs)* | **Less than Significant Impacts** With standard measures determined with design. |
| **LAND USE** | **Policy Consistency** *(County plans, zoning)* | **Potentially Significant Impact** |
| | **No Growth-Inducing Effect** | **Less than Significant Impact** |
| **NOISE** | **Long-Term Operations Noise** | **Less than Significant Impact** |
| | **Temporary Construction Noise** *(sensitive receptors not in close proximity)* | **Less than Significant Impact** Standard measures would minimize effect. |
| **OPEN SPACE, VISUAL** | **Open Space/Visual Resources, Scenic Views, Visual Compatibility, Lighting** | **Less than Significant Impacts** With Design Review approval. |
| **PUBLIC FACILITIES & SERVICES** | **Fire, Police, Schools, Parks Services** *(Loss of recreation area) (Fire, Police, Schools services demand)* | **Potentially Significant Park Impact** Identify impact as part of CEQA environmental review **Less than Significant Impact** Fire/Police/Schools |
| **PUBLIC UTILITIES** | **Water, Wastewater, Solid Waste Demand** | **Less than Significant impacts** |
| **TRANSPORTATION** | **Long-term Operations - Traffic Congestion** *(peak-hour intersection traffic)* | **Potentially Significant Impact** Impact to be determined with CEQA review. |
| | **Circulation, Emergency Access, Alternate Modes** *(pedestrian, bicycle, bus, rail)* | **Less than Significant Impacts** |
| | **Temporary Construction Traffic** | **Less than Significant Impact** With standard measures applied. |

*\*Note: This is a preliminary environmental evaluation to help inform the public and City Council's initial choice of a preferred site alternative to undergo project design and the official CEQA environmental review process prior to City decisions on site selection and project approval.*

*Santa Barbara Police Station Project*
**Earl Warren Showgrounds Site Alternative**
**PRELIMINARY ENVIRONMENTAL REVIEW**

August 2019

### Site Alternative

This site alternative would entail a 4.16-acre portion of the Earl Warren Showgrounds (Assessor's Parcel Number 051-230-017) located at 3400 Calle Real, a 33.9 acre property located at the corner of Las Positas Road and Calle Real. The property is owned by the State of California, and is within unincorporated Santa Barbara County jurisdiction. The property is bordered to the west and north by the Santa Barbara Community Golf Course and Adams Elementary School, to the east by Las Positas Street, and to the south by Highway 101, with residences along Calle Real and Los Positas Road.

Earl Warren Showgrounds is a multi-use community event center including an auditorium, stadium, equestrian facility, and convention center. It is used during weekdays, evenings, and weekends, including for the Santa Barbara Fair & Expo, Santa Barbara National Horse Show, the Haunt at the Showgrounds and many other events, conferences, concerts, and activities. The showgrounds has the largest parking lot and indoor facilities in the County. It also functions as a local community support center providing emergency management staging and evacuation sites for people and animals.

A 4.16-acre (181,209.6 square feet) portion of the site is currently available for a long-term ground lease from the State of California. This portion of the site is located at the western end of the parcel and is currently occupied by a horse arena, hockey arena, three cell towers, various temporary structures, and a parking lot. The site is paved, with ornamental trees and landscaping across the site.

### Project Description

The project would include removal of all existing structures, including the horse arena, hockey arena, and various temporary structures, and either removal or relocation of the cell towers.

The existing Santa Barbara City Police operations are located at four separate sites (215 Figueroa Street police station, 222 East Anapamu Street police station annex, 1200 Anacapa Street dispatch, and 415 Sola Street animal control) and would be consolidated at the new project site.

The project would consist of a new up to 72,000 square foot Police Station building, a new 131,255 square foot secure parking structure to accommodate 252 parking spaces (128 for Police Department vehicles and 124 for employee vehicles), up to 80 public non-secured surface parking spaces, and up to 42 bicycle parking spaces. Both the Police Station building and the parking structure would include up to three aboveground stories, with an overall maximum height of approximately 60 feet.

The Police operations would remain the same as presently exist at the current locations and would include the Investigative/internal Operations Division, Field Operations Division, Community Support Services Division, and Common Areas (public lobby, multi-purpose meeting rooms, staff break rooms, fitness room, and locker rooms). The public lobby area would be separated from the secure staff areas.

The site preparation and construction process is estimated to take 28 months, including three months for the earthwork phase and 25 months for the construction phase.

1  Joel S. Farkas, Esq. (S.B. # 244032)
2  5404 Whitsett Avenue #46
   Valley Village, California 91607
3  Tel:  (310) 621-6654
   Fax:  (818) 495-2513
4
5  Attorney for Plaintiffs

6

7

8               UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10

11

| | |
|---|---|
| BRUCE BOYER, an individual; DAVID WAYNE GRIGGS, an individual; KIMBERLY COLLEEN GRIGGS, an individual; and JONATHAN BOYER, an individual, | Case No. |
| | |
| vs. | COMPLAINT FOR: |
| | 1.  VIOLATION OF 42 U.S.C. § 1983 |
| CITY OF SANTA BARBARA; SANTA BARBARA POLICE DEPARTMENT; JOHNS HOPKINS CENTER FOR GUN VIOLENCE SOLUTIONS, successor in interest of The Coalition Against Gun Violence; and DOES 1 to 101, | [DEMAND FOR JURY TRIAL] |
| Defendants. | |

COMPLAINT

**1**

Plaintiffs Bruce Boyer, David Wayne Griggs, Kimberly Colleen Griggs, and Jonathan Boyer allege as follows:


**Jurisdiction and Venue**

1.  All of the relevant events and circumstances occurred in the County of Ventura, and the United States District Court for the Central District of California is Court has jurisdiction over this action pursuant to 28 U.S.C. § 1343.


**Parties**

2.  Plaintiff Bruce Boyer ("Bruce") is now and, at all times relevant herein, was a resident of the State of California, County of Ventura.

3.  Plaintiff David Wayne Griggs ("David") is now and, at all times relevant herein, was a resident of the State of California, County of Ventura.

4.  Plaintiff Kimberly Colleen Griggs ("Kimberly") is now and, at all times relevant herein, was a resident of the State of California, County of Ventura.

5.  Plaintiff Jonathan Boyer ("Jonathan") is now and, at all times relevant herein, was a resident of the State of California, County of Los Angeles.

COMPLAINT

2

6.    Plaintiff is informed and believes and, based thereon, alleges that Defendant City of Santa Barbara ("Santa Barbara") is and, at all relevant times, was a municipality chartered and existing under the laws of the State of California.

7.    Plaintiff is informed and believes and, based thereon, alleges that Defendant Santa Barbara Police Department ("SBPD") is an agency, department or subdivision of Defendant Santa Barbara.

8.    Plaintiff is informed and believes and, based thereon, alleges the entity involved in the events described in this Complaint is The Coalition Against Gun Violence.  Plaintiff is further informed and believes and, based thereon, alleges that CAGV was merged into, and succeeded by, Defendant Johns Hopkins Center for Gun Violence Solutions, located at 615 North Wolfe Street, Baltimore Maryland 21205.  Hereinafter, these entities shall be collectively referred to as the "CAGV".

**Doe Defendants**

9.    Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES and therefore sues these Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes and, based thereon,

alleges that each of the fictitiously named Defendants is negligently, contractually, or otherwise responsible, directly or indirectly, in whole or in part, for the occurrences alleged in this complaint, and Plaintiff's injuries, as alleged herein, were proximately caused by the actions of such DOE Defendants.

10.  Plaintiff is informed and believes and, based thereon, alleges that, at all times relevant herein, each of the Defendants identified herein, including, but not limited to, those named as DOES, were acting as agents, principals, representatives, proxies, guardians, surrogate, alter egos, or otherwise, on behalf of the other Defendants, collectively or individually, and thus, each such identified Defendants, including, but not limited to those names as DOES, are individually or collectively, directly or indirectly, in whole or in part, or vicariously or otherwise liable for the acts or omissions of the other Defendants, individually or collectively.

**Relevant Facts**

11.  Plaintiffs are informed and believe and, based thereon, allege that Defendant CAGV is, and was, an organization whose purpose is to foster the restriction of gun ownership, and advocate for the total ban of certain types of firearms.

COMPLAINT

**4**

12.  On August 21, 2021, Defendants Santa Barbara, SBPD and CAGV
collectively conducted a so-called "gun buyback" event ("Buyback") at the
Earl Warren Showgrounds in Santa Barbara, California.

13.  For weeks prior to the Buyback, Defendants Santa Barbara, SBPD and CAGV
advertised the Buyback through flyers, newspaper advertisements, electronic
media, and other forms of mass communication.  The advertisements noted
that the Buyback was being conducted by Defendants Santa Barbara, SBPD
and CAGV. Moreover, by jointly participating with Defendant CAGV in the
Buy Back, and by jointly advertising the Buy Back, Defendants Santa Barbara
and SBPD adopted and promoted the political purposes and goals of
Defendant CAGV.

14.  The advertisements identified the event as a "gun buyback".  The
advertisement did not restrict the event to the purchase of any single type of
"gun."

15.  Plaintiffs Bruce, David, Kimberly, and Jonathan are firearm rights activists,
and they are members of an organization known as the "Sons of Liberty LA"
("SOLLA").  Plaintiffs Bruce, David, Kimberly, and Jonathan, as well as other
SOLLA members, believe that the right to bear arms is enshrined in the

COMPLAINT
**5**

Second Amendment of the United States Constitution.  Plaintiffs Bruce,
David, Kimberly, and Jonathan, as well as other SOLLA members, further
believe that the Buyback was unconstitutional as it was conducted a private
political group – i.e., CAGV – with the imprimatur of a public municipality
and its agency – i.e., Santa Barbara and SBPD.

16.   Accordingly, on August 21, 2021, Plaintiffs Bruce, David, Kimberly, and
Jonathan participated in the Buyback in a way which did not interfere with the
Buyback, but still expressed their opposition to it.

17.   Specifically, the Buy Back involved a surrender of "guns" by members of the
public in exchange for gift cards.   Persons wishing to surrender a "gun" had
to form a line with their vehicles from a public street to the actual place of the
exchange, and they had to place their "guns" in the trunk or rear of their
vehicles.  When a vehicle arrived at the exchange area, persons in the
passenger compartment were instructed to remain in the vehicle, and the
driver was told to open the vehicle's trunk.  An individual, believed to be a
SBPD officer removed the "guns" and took them to an inspection area.  The
SBPD officer then returned to the vehicle and handed the driver a $100 gift
cart for each "gun" or piece of a "gun" surrendered.

COMPLAINT
6

18. Plaintiffs Bruce, David, Kimberly, and Jonathan appeared at the Buyback with toy "guns" in the trunks of their vehicle as a means of protesting the event. Plaintiffs Bruce, David, Kimberly, and Jonathan believed that the items satisfied the definition of "guns", as advertised, since the advertisements did not specify any type of "gun".

19. Plaintiffs Bruce, David, Kimberly, and Jonathan fully complied with the instructions and procedures imposed by Defendants CAGV and for exchanging the "guns," including placing the items in the trunks of their vehicles, remaining in their vehicles, and waiting in a vehicle line to exchange their "guns."

20. Plaintiff Boyer had several toy "guns" within a box in the trunk of his automobile. When he arrived at the exchange location, he informed the officer that the items were in a box in the trunk of his automobile. Boyer opened his car's trunk, and the officer removed the box.

21. The officer returned to Boyer's vehicle and told him that the items in the box were toys, and that he would not be given a gift card for the items. Boyer respectfully asked to talk to the person in charge. Boyer was allowed to park his vehicle away from the exchange line to avoid blocking other vehicles. He

was then taken to speak to a woman – whose name he does not presently

recall – who was a representative of CAGV, and not a SBPD officer.  A SBPD

officer was also present while Boyer spoke to the CAGV representative.

22.    Boyer told this person that he and Plaintiffs David, Kimberly, and Jonathan

were protesting the Buyback, including the participation of a private,

politically oriented organization, such as CAGV, in what was ostensibly a

publicly sponsored and funded event.  Boyer further stated that he submitted

"guns" as called for in the advertisements, and he was entitled to a gift card

for each gun.

23.    While conversing with the CAGV representative, another SBPD officer

approached the group and stated that there were other persons – including

Plaintiffs David, Kimberly, and Jonathan – in the vehicle exchange line,

insisting that they be given gift cards in exchange for toy "guns."

24.    At this point, the SBPD officer who accompanied the CAGV representative

told Boyer that if he and Plaintiffs David, Kimberly, and Jonathan did not

immediately leave the Buyback location, they would be arrested.  Boyer

responded that he had a right to protest the Buyback in a manner which did

not impede the event, since he was a member of the public invited to

participate in the Buyback.

25. Plaintiffs had no choice other than to face arrest or leave the event, without the gift cards, even though they believed that the SBPD's threats violated their freedom of speech, assembly, and liberty as guaranteed by the United States Constitution.

26. Finally, Plaintiffs were entitled to be at the event to participate and/or protest, and to get their gift cards. Instead, Plaintiffs were told to leave under threat of arrest, not given gift cards, and defendants CAGV and SBPD kept the toy "guns" presented by Plaintiffs without compensating them for these items.

**First Cause of Action**
**Violation of Federally Protected Rights under 42 U.S.C. § 1983**
(Against All Defendants)

27. Plaintiffs restate paragraphs 1 through 26 as if fully set forth herein and incorporates same by reference.

28. Defendants, while acting under the color of state law, sought to deprive Plaintiffs of their rights to free speech and freedom of assembly, in violation of the First Amendment of the United States Constitution, and their right to liberty, in violation of the Fourteenth Amendment of the United States Constitution.

29. As a direct and proximate cause of Defendants; actions, Plaintiffs have suffered embarrassment, humiliation, and emotional distress.

30. Plaintiffs have also suffered damages in excess of the minimum established for this Court, in an amount to be determined at time of trial.

WHEREFORE, Plaintiff requests that the Court:

1. Award Plaintiffs damages, in an amount to be proven at time of trial;

2. Award Plaintiffs their cost of suit and attorney fees, pursuant to 42 U.S.C. § 1988.

3. Award Plaintiffs such other and further relief as the Court deems just and proper.

Dated: August 18, 2023          by: _____

Joel S. Farkas
Attorney for Plaintiffs

DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of their claims in this action.

Dated: August 18, 2023          by: _____

Joel S. Farkas
Attorney for Plaintiffs

COMPLAINT
10

1  Joel S. Farkas, Esq. (S.B. # 244032)
   LAW OFFICE OF JOEL FARKAS
2  5404 Whitsett Avenue #46
   Valley Village, California 91607
3  jsf@licitlaw.com
   Tel: (310) 621-6654
4  Fax: (818) 495-2513

5  George M. Wallace – Cal. Bar No. 101472
   GEORGE M. WALLACE, ATTORNEY AT LAW
6  215 North Marengo Avenue, Third Floor
   Pasadena, California 91101-1504
7  gwallace@wbslaw.com
   Tel:   (626) 844-6777
8  Fax:   (626) 795-0353

9  Attorneys for Plaintiffs

10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

| 14 | BRUCE BOYER, an individual; DAVID WAYNE GRIGGS, an individual; KIMBERLY COLLEEN GRIGGS, an individual; and JONATHAN BOYER, an individual, | ) ) ) ) ) ) | Case No.: 2:23-cv-06828-TJH-MAA |
|---|---|---|---|

14  BRUCE BOYER, an individual;          )  Case No.: 2:23-cv-06828-TJH-MAA
    DAVID WAYNE GRIGGS, an               )
15  individual; KIMBERLY COLLEEN         )  NOTICE OF APPEAL TO THE
    GRIGGS, an individual; and           )  UNITED STATES COURT OF
16  JONATHAN BOYER, an individual,       )  APPEALS FOR THE NINTH
                                         )  CIRCUIT
17              Plaintiffs,              )
                                         )
18      vs.                              )
                                         )
19  CITY OF SANTA BARBARA;               )
    SANTA BARBARA POLICE                 )
20  DEPARTMENT; JOHNS HOPKINS            )
    CENTER FOR GUN VIOLENCE             )
21  SOLUTIONS, successor in interest of  )
    The Coalition Against Gun Violence,  )
22                                       )
                Defendants.              )
23  _____ )

24

25

(117 of 123), Page 117 of 123 Case: 24-5393, 11/14/2024, DktEntry: 9.1, Page 117 of 123
Case 2:23-cv-06828-TJH-MAA    Document 35    Filed 08/30/24    Page 2 of 2   Page ID
#:169

1     BRUCE BOYER, an individual; DAVID WAYNE GRIGGS, an

2  individual; KIMBERLY COLLEEN GRIGGS, an individual; and JONATHAN

3  BOYER, an individual, plaintiffs in this action, appeal to the United States Court

4  of Appeals for the Ninth Circuit from the Judgment/Order of Dismissal of the

5  District Court, entered in this case on August 2, 2024, and all appealable

6  interlocutory orders that gave rise to that order.

7

8   DATED: August 30, 2024                GEORGE M. WALLACE, ATTORNEY
                                          AT LAW
9

10                                        _/s/ George M. Wallace_
                                          By: GEORGE M. WALLACE
11                                        Attorney for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Notice of Appeal to Ninth Circuit Court of Appeals - 2

ACCO,NORTHERN,(MAAx),APPEAL,CLOSED,DISCOVERY,MANADR

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:23-cv-06828-TJH-MAA

| | |
|---|---|
| Bruce Boyer et al v. City of Santa Barbara et al | Date Filed: 08/18/2023 |
| Assigned to: Judge Terry J. Hatter, Jr | Date Terminated: 08/01/2024 |
| Referred to: Magistrate Judge Maria A. Audero | Jury Demand: Plaintiff |
| Case in other court: 9th CCA, 24-05393 | Nature of Suit: 440 Civil Rights: Other |
| Cause: 42:1983 Civil Rights Act | Jurisdiction: Federal Question |

**Plaintiff**

**Bruce Boyer**
*an individual*

represented by **George M Wallace , Jr.**
Wallace Brown and Schwartz
215 North Marengo Avenue 3rd Floor
Pasadena, CA 91101-1504
626-844-6777
Fax: 626-795-0353
Email: gwallace@wbslaw.com
*ATTORNEY TO BE NOTICED*

**Joel Samuel Farkas**
Law Office of Joel Farkas
5404 Whitsett Avenue No 46
Valley Village, CA 91607
310-621-6654
Fax: 818-495-2513
Email: jsf@licitlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**David Wayne Griggs**
*an individual*

represented by **George M Wallace , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joel Samuel Farkas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kimberly Colleen Griggs**
*an individual*

represented by **George M Wallace , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joel Samuel Farkas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

ER_118

**Jonathan Boyer**
*an individual*

represented by **George M Wallace , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joel Samuel Farkas**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**City of Santa Barbara**

represented by **Delaney R. Satz**
Santa Barbara City Attorney's Office
740 State Street, Suite 201
Santa Barbara, CA 93101
805-564-5328
Email: DSatz@SantaBarbaraCA.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tom R Shapiro**
Santa Barbara City Attorney
740 State Street Suite 201
P O Box 1990
Santa Barbara, CA 93102-1990
805-564-5326
Fax: 805-564-5426
Email: tshapiro@santabarbaraca.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Santa Barbara Police Department**

represented by **Delaney R. Satz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tom R Shapiro**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Johns Hopkins Center for Gun Violence Solutions**
*successor in interest of The Coalition Against Gun Violence*

**Defendant**

**Does**
*1 to 101*

| Date Filed | # | Docket Text |
|---|---|---|

ER_119

| 08/18/2023 | 1 | COMPLAINT Receipt No: ACACDC-35888023 - Fee: $402, filed by plaintiff Bruce Boyer. (Attorney Joel Samuel Farkas added to party Bruce Boyer(pty:pla))(Farkas, Joel) (Entered: 08/18/2023) |
| --- | --- | --- |
| 08/18/2023 | 2 | CIVIL COVER SHEET filed by Plaintiffs Bruce Boyer, Jonathan Boyer, David Wayne Griggs, Kimberly Colleen Griggs. (Farkas, Joel) (Entered: 08/18/2023) |
| 08/18/2023 | 3 | *Certification and* NOTICE of Interested Parties filed by Plaintiffs Bruce Boyer, Jonathan Boyer, David Wayne Griggs, Kimberly Colleen Griggs, (Attorney Joel Samuel Farkas added to party Jonathan Boyer(pty:pla), Attorney Joel Samuel Farkas added to party David Wayne Griggs(pty:pla), Attorney Joel Samuel Farkas added to party Kimberly Colleen Griggs(pty:pla))(Farkas, Joel) (Entered: 08/18/2023) |
| 08/21/2023 | 4 | NOTICE OF ASSIGNMENT to District Judge Terry J. Hatter, Jr and Magistrate Judge Maria A. Audero. (sh) (Entered: 08/21/2023) |
| 08/21/2023 | 5 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (sh) (Entered: 08/21/2023) |
| 08/21/2023 | 6 | Notice to Counsel Re Consent to Proceed Before a United States Magistrate Judge. (sh) (Entered: 08/21/2023) |
| 08/25/2023 | 7 | (IN CHAMBERS) -NEW CASE BEFORE JUDGE HATTER: This action has been assigned to the calendar of the HONORABLE TERRY J. HATTER, JR., United States District Judge. Please include the initials TJH in all documents pertaining to this case, as documents are routed using the judge's initials, it is imperative that the correct initials TJH be used on all subsequent filings to prevent any delays in the processing of documents. Judge Hatter's Courtroom Deputy Clerk is Yolanda Skipper. She can be reached at (213) 894-5276. Counsel shall not attempt to contact the Court or its chambers staff by telephone or by any other ex parte means, although counsel may contact the Courtroom Deputy, Yolanda Skipper, at: yolanda_skipper@cacd.uscourts.gov, with appropriate inquiries. Judge Hatter's courtroom is located on the 9th Floor, at 350 W. 1st Street, United States Courthouse, Courtroom No. 9C. Additional information about Judge Hatter's procedures and schedules can be found on the court's website at www.cacd.uscourts.gov. IT IS SO ORDERED. See order for more information. (aco) (Entered: 08/25/2023) |
| 11/04/2023 | 8 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening) 1 filed by plaintiff Bruce Boyer. (Farkas, Joel) (Entered: 11/04/2023) |
| 11/06/2023 | 9 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Document RE: Summons Request 8 . The following error(s) was/were found: The complaint has not been amended to include new parties The City of Simi Valley is not a party to this case In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (shb) (Entered: 11/06/2023) |
| 11/22/2023 | 10 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening) 1 filed by plaintiff Bruce Boyer. (Farkas, Joel) (Entered: 11/22/2023) |
| 11/22/2023 | 11 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening) 1 filed by plaintiff Bruce Boyer. (Farkas, Joel) (Entered: 11/22/2023) |
| 11/22/2023 | 12 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening) 1 filed by plaintiff Bruce Boyer. (Farkas, Joel) (Entered: 11/22/2023) |
| 11/27/2023 | 13 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening) 1 as to Defendant City of Santa Barbara. (shb) (Entered: 11/27/2023) |

| 11/27/2023 | 14 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening) 1 as to Defendant Santa Barbara Police Department. (shb) (Entered: 11/27/2023) |
| 11/27/2023 | 15 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening) 1 as to Defendant Johns Hopkins Center for Gun Violence Solutions. (shb) (Entered: 11/27/2023) |
| 12/07/2023 | 16 | NOTICE of Appearance filed by attorney Tom R Shapiro on behalf of Defendant City of Santa Barbara (Attorney Tom R Shapiro added to party City of Santa Barbara(pty:dft)) (Shapiro, Tom) (Entered: 12/07/2023) |
| 12/07/2023 | 17 | STIPULATION Extending Time to Answer the complaint as to City of Santa Barbara answer now due 1/22/2024, filed by Defendant City of Santa Barbara.(Shapiro, Tom) (Entered: 12/07/2023) |
| 12/08/2023 | 18 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Document RE: Notice of Appearance 16 . The following error(s) was/were found: Incorrect event selected. Correct event to be used is: Notice of Appearance or Withdrawal of Counsel G123.. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (ak) (Entered: 12/08/2023) |
| 01/16/2024 | 19 | Notice of Appearance or Withdrawal of Counsel: for attorney Tom R Shapiro counsel for Defendants City of Santa Barbara, Santa Barbara Police Department. Adding Delaney R. Satz as counsel of record for City of Santa Barbara and Santa Barbara Police Department for the reason indicated in the G-123 Notice. Filed by Defendant City of Santa Barbara and Santa Barbara Police Department. (Shapiro, Tom) (Entered: 01/16/2024) |
| 01/22/2024 | 20 | NOTICE OF MOTION AND MOTION to Dismiss Case filed by Defendants City of Santa Barbara, Santa Barbara Police Department. Motion set for hearing on 2/26/2024 at 09:00 AM before Judge Terry J. Hatter Jr. (Attachments: # 1 Memorandum Memorandum of Points and Authorities in Support of Motion to Dismiss, # 2 Declaration Declaration of Delaney R. Satz in Support of Motion, # 3 Exhibit Exhibit A, # 4 Exhibit Exhibit B, # 5 Exhibit Exhibit C, # 6 Proposed Order [Proposed] Order on Motion to Dismiss) (Satz, Delaney) (Entered: 01/22/2024) |
| 01/22/2024 | 21 | REQUEST FOR JUDICIAL NOTICE re NOTICE OF MOTION AND MOTION to Dismiss Case 20 filed by Defendants City of Santa Barbara, Santa Barbara Police Department. (Satz, Delaney) (Entered: 01/22/2024) |
| 01/22/2024 | 22 | NOTICE of Interested Parties filed by Defendants City of Santa Barbara, Santa Barbara Police Department, (Shapiro, Tom) (Entered: 01/22/2024) |
| 02/09/2024 | 23 | NOTICE OF NO OPPOSITION FILED TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT re NOTICE OF MOTION AND MOTION to Dismiss Case 20 filed by Defendants City of Santa Barbara, Santa Barbara Police Department. (Satz, Delaney) (Entered: 02/09/2024) |
| 02/16/2024 | 24 | FIRST AMENDED COMPLAINT against Defendants All Defendants amending Complaint (Attorney Civil Case Opening) 1 , filed by plaintiff Bruce Boyer(Farkas, Joel) (Entered: 02/16/2024) |
| 02/18/2024 | 25 | NOTICE TO FILER OF DEFICIENCIES in Electronic Filed Document RE: Amended Complaint/Petition 24 . The following error(s) was/were found: Local Rule 11-3.8 title page is missing, incomplete, or incorrect. Other error(s) with document(s): The case number is missing from the caption page of the First Amended Complaint. The case number 2:23-cv-06828-TJH (MAAx) should be on the title page of all documents filed.. In response to this notice, the Court may: (1) order an amended or correct document to be |

| | | |
|---|---|---|
| | | filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (shb) (Entered: 02/18/2024) |
| 03/01/2024 | 26 | NOTICE OF MOTION AND MOTION to Dismiss Case filed by Defendants City of Santa Barbara, Santa Barbara Police Department. Motion set for hearing on 4/1/2024 at 10:00 AM before Judge Terry J. Hatter Jr. (Attachments: # 1 Memorandum of Points and Authorities in Support of Motion to Dismiss, # 2 Declaration of Delaney Satz, # 3 Exhibit A, # 4 Exhibit B, # 5 Proposed Order on Motion to Dismiss) (Satz, Delaney) (Entered: 03/01/2024) |
| 03/01/2024 | 27 | REQUEST FOR JUDICIAL NOTICE re NOTICE OF MOTION AND MOTION to Dismiss Case 26 filed by Defendants City of Santa Barbara, Santa Barbara Police Department. (Satz, Delaney) (Entered: 03/01/2024) |
| 03/07/2024 | 28 | MINUTES IN CHAMBERS- ORDER AND NOTICE TO ALL PARTIES by Judge Terry J. Hatter, Jr. Counsel are hereby notified that pursuant to the Judge's directive, now that the First Amended Complaint 24 has been filed, the motion to dismiss 20 is hereby moot. (rolm) (Entered: 03/07/2024) |
| 03/13/2024 | 29 | NOTICE OF NO OPPOSITION FILED TO DEFEDNANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT re NOTICE OF MOTION AND MOTION to Dismiss Case 26 filed by Defendants City of Santa Barbara, Santa Barbara Police Department. (Satz, Delaney) (Entered: 03/13/2024) |
| 03/15/2024 | 30 | MEMORANDUM in Opposition to NOTICE OF MOTION AND MOTION to Dismiss Case 26 filed by Plaintiffs Bruce Boyer, Jonathan Boyer, David Wayne Griggs, Kimberly Colleen Griggs. (Attachments: # 1 Declaration of Bruce Boyer, with Exhibit 1)(Farkas, Joel) (Entered: 03/15/2024) |
| 03/25/2024 | 31 | REPLY in Support of NOTICE OF MOTION AND MOTION to Dismiss Case 26 filed by Defendants City of Santa Barbara, Santa Barbara Police Department. (Satz, Delaney) (Entered: 03/25/2024) |
| 08/01/2024 | 32 | ORDER 26 by Judge Terry J. Hatter, Jr. It is Ordered that this case be, and hereby is, Dismissed without prejudice. (SEE DOCUMENT FOR FURTHER DETAILS.) ( MD JS-6. Case Terminated ) (rolm) (Entered: 08/02/2024) |
| 08/29/2024 | 33 | NOTICE of Appearance filed by attorney George M Wallace, Jr on behalf of Plaintiffs Bruce Boyer, Jonathan Boyer, David Wayne Griggs, Kimberly Colleen Griggs (Attorney George M Wallace, Jr added to party Bruce Boyer(pty:pla), Attorney George M Wallace, Jr added to party Jonathan Boyer(pty:pla), Attorney George M Wallace, Jr added to party David Wayne Griggs(pty:pla), Attorney George M Wallace, Jr added to party Kimberly Colleen Griggs(pty:pla))(Wallace, George) (Entered: 08/29/2024) |
| 08/29/2024 | 34 | NOTICE TO FILER OF DEFICIENCIES in Electronic Filed Document RE: Notice of Appearance, 33 . The following error(s) was/were found: Incorrect event selected. Correct event to be used is: Notice of Appearance or Withdrawal of Counsel G123.. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (ak) (Entered: 08/29/2024) |
| 08/30/2024 | 35 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by Plaintiff Bruce Boyer, Jonathan Boyer, David Wayne Griggs, Kimberly Colleen Griggs. Appeal of Order on Motion to Dismiss Case 32 . (Appeal Fee - $605 Fee Paid, Receipt No. ACACDC-38127747.) (Attachments: # 1 Representation Statement)(Wallace, George) (Entered: 08/30/2024) |

ER_122

| 09/04/2024 | 36 | NOTIFICATION from Ninth Circuit Court of Appeals of case number assigned and briefing schedule. Appeal Docket No. 24-5393 assigned to Notice of Appeal to 9th Circuit Court of Appeals, 35 as to plaintiffs Bruce Boyer, Jonathan Boyer, David Wayne Griggs, Kimberly Colleen Griggs. (mat) (Entered: 09/06/2024) |
|---|---|---|

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 11/14/2024 08:52:00 | | |
| **PACER Login:** | WallaceGeo | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:23-cv-06828-TJH-MAA End date: 11/14/2024 |
| **Billable Pages:** | 6 | **Cost:** | 0.60 |

ER_123